## Bachman *versus* Killinger.

1. The possession by a husband of a bond belonging to his wife is not a conclusive circumstance of gift by the wife.

2. The possession by the wife of her husband's moneys, securities and property is very slight evidence of a transfer of the ownership, and his possession of her chattels ought to be considered still less evidence of title in him.

3. In a suit for the use of a wife against a surety in a bond in which the husband was principal, declarations of the husband are evidence for the plaintiff.

4. In a suit against a surety (the husband being principal), on a bond, the separate property of the wife, although in the possession of the husband, the burden of proof that the title is in him is on the defendant.

5. In such a suit for the use of the wife interest cannot be recovered. Per Pearson, P. J.

May 22d 1867. Before Woodward, C. J., Thompson and Agnew, JJ. Strong and Read, JJ., absent.

Error to the Court of Common Pleas of *Lebanon county*.

This was an action of debt, commenced August 9th 1866, by John W. Killinger against Mary A. Bachman and Jacob Uhrick, administrators, &c., of John K. Bachman, deceased.

The bond in suit, which was dated March 31st 1862, was the joint and several bond of Christian L. Bowman, Samuel Bowman and John K. Bachman to John W. Killinger; it was for $3000, payable on the 1st of April 1862. Samuel Bowman and John K. Bachman were the sureties of C. L. Bowman.

C. L. Bowman married Emma Bachman in 1859; she was then a minor, and the plaintiff, J. W. Killinger, was her guardian. He received of her estate $5000 principal, $3000 of which was loaned on the bond in suit.

On the 14th of June 1862, a few days after she came of age, the guardian delivered to her this bond, his own bond for $1500, and $1100 in cash, and took the joint release of herself and husband for $5600, that being the whole amount of her estate. The guardian told her at the time that he had taken the bond for her, and she must keep it as her own separately.

C. L. Bowman, after living happily with his wife for a few years, fell into habits of intemperance, until they produced insanity, and he had occasionally to be chained. It appeared that he had spent all her estate but the bond in suit. It also appeared that at one time he had been hunting for this bond, and sent his wife to look for it in the secretary, but she could not find it; he sent for a portfolio, which she brought, and the bond was found in it. He gave the bond to her, saying, " what does she want more; it is worth to my wife $3000 at any time." C. L. Bowman was insolvent, and separated from his wife.

The defendants submitted a number of points to the court, amongst others—

[Bachman *v.* Killinger.

5. The possession of the bond by the husband, who is the principal debtor, is evidence of a gift of the bond to him, unless the wife can establish facts which negative such presumption.

6. If the jury believe that the husband originally called upon the guardian of the wife, for this money, with the consent of the wife, and that she then designed to make a gift of it to the husband; the subsequent possession of the bond by the husband is some evidence of an execution of this intention when she became of age, and the jury may presume a gift from the possession alone, unless the wife can account in some satisfactory way for her loss of the possession of the bond.

8. The acts and declarations of the husband, after the bond is traced into his possession, although evidence against himself, cannot be received against these defendants.

The court (Pearson, P. J.) charged:—

"The defendants contend that the bond of their intestate is discharged; that he was merely a surety, and that when the obligation came into the hands of C. L. Bowman from the hands of his wife, it ceased to be binding either on him or his bail. That the presumption is that she made to her husband a present of the obligation, because it was found in his custody and among his papers.

"We are by no means prepared to say that a wife might not make her husband a present of a bond representing a large portion of her patrimony, but we are of opinion that there should be some proof of the fact, and the circumstances under which it was done, something more than the bare circumstance that the obligation was kept in the same place where he kept his papers, and where she probably kept hers also, if she had any. The intimate relation between husband and wife is such that there is generally a community of possession in all their goods, including their papers and obligations, nor was it the intention of the Act of 1848 to destroy that community or unity of possession. They were expected to enjoy them together, not separately. If the wife received a present of a horse during coverture, or owned it before marriage, the husband would be expected to feed, use and work it, to have the general control and custody of the animal, yet it would belong to the wife, and could not be seized for the husband's debt, nor could he lawfully sell or give it to one who knows of the wife's interest or ownership. She could reclaim it. If she held her husband's bond for a debt due in her own right, the bare fact that after his death it was found in a drawer which they mutually used, or in which he kept his papers, would not preclude her from recovering the amount from his estate. A court should have some other evidence of a gift of the money. [We ought to know the circumstances under which it was given, that we might see and judge whether it was fairly done, or the possession obtained through coercion, or by overreaching. So

[Bachman *v.* Killinger.]

far does the law go that where it is shown that a husband has reduced his wife's debt to possession, the presumption is that he received it in trust for her, a stronger circumstance evidencing a claim of ownership on his part than the bare custody of the bond due her. If·actually handed over to him, it might be fairly presumed that he was the mere custodian for her use.] We have no other evidence on which to build up the theory of a gift of this bond by the wife to her husband, than that after he had become a confirmed drunkard, and wasted all of his own, and the money portion of his wife's estate, was a maniac and chained under the direction of his father, to prevent his doing damage, the wife was endeavoring to find her bond. The husband suggested different places to send for it ; in the drawer of his secretary ; in his portfolios, where it was at length found. Neither appeared to have known where it was, but when found, he held it up, exclaiming, ' What does she want more : that is worth $3000 to my wife any time.' [He does not pretend to claim it as his own, or assert that it had been given to him. After this, could he or his representatives successfully contend against the obligation ? If he is bound, how shall the security be discharged, unless on some equity peculiar to themselves, which is not pretended here ?] The declarations of a husband operating in favor of his wife, must be received with great caution, but the weakness of the defence consists in the want of proof. [The jury is asked to infer a gift on what we consider very weak, and, perhaps, insufficient evidence.] We do not say that a jury might not draw an inference of gift, but it certainly would be on very slight and unsatisfactory evidence. Does this bond bear interest from its date ? As a general rule the obligation of a husband to his wife will not. If the husband receives the interest due on his wife's money, the inference is that it is for their mutual support, and that of their family. In several reported cases it has been held that the husband's notes or acknowledgment of indebtedness to his wife did not bear interest ; in one reported case that it will where such appears to have been the contract. This bond is drawn *with interest*, but that was because the guardian might be called on to pay interest to his ward. After the bond went into her hands it would cease as against the husband. Had he died, and the wife sued his representatives, she could not have recovered interest during his lifetime, but would from his death. Her claims are the same against his sureties. If, therefore, you find a verdict for the plaintiff, it will be without interest. We will now proceed to answer the defendants' points.

" 5. The bare possession of the husband alone, without showing how obtained, would raise very slight evidence of a gift by the wife. She is not required to negative the gift, but he should show it.

[Bachman v. Killinger.]

" 6. The jury can scarcely draw any such inference from the acts of a married woman, who had barely attained her majority. The presence of the husband at the settlement, and his signature to the release, was proper and necessary. The circumstance of the guardian taking the bond, and the cautions given to the wife on delivering it to her, together with her money, show that it was not then intended by the guardian that the husband should have either, nor was there anything then said or done by the wife, so far as proved, which would show that she designed to give him this bond.

" 8. We are not prepared to say that the declarations of the husband, as proved, are incompetent; but they must be weighed with great caution by the jury when they tend to favor the wife, although they at the same time raise an obligation against himself."

The verdict was for the plaintiff for $3000.

The defendants removed the case, and in the Supreme Court assigned for error those parts of the charge in brackets and the answers to the points.

*J. Funck*, for plaintiff in error, cited Tower *v.* Hagner, 3 Whart. 57; McGlinsey's Appeal, 14 S. & R. 65; Naglee *v.* Ingersoll, 7 Barr 204; Hinney *v.* Phillips, 14 Wright 386.

*J. C. Kunkel*, for defendant in error, cited Hoar *v.* Axe, 10 Harris 381; Manderbach *v.* Mack and Wife, 5 Casey 43; Grabill *v.* Moyer, 9 Wright 530; Walker *v.* Reamy, 12 Casey 411; Gamber *v.* Gamber, 6 Harris 363; Phelin *v.* Kenderdine, 8 Id. 354; Graham *v.* Smith, 1 Casey 325; Schoneman *v.* Fegely, 2 Harris 377; Sailor *v.* Hertzogg, 10 Barr 296; Hamet *v.* Dundas, 4 Id. 179.

The opinion of the court was delivered, November 4th 1867, by

WOODWARD, C. J.—The court very plainly intimated to the jury, almost instructed them in terms, that Mrs. Bowman might make a gift of the bond to her husband, and that such a gift, once executed, would release the husband and his sureties from all liabilities on the bond; but in submitting the evidence of such a gift they characterized it as weak and unsatisfactory.

The bond was patrimonial—made to the guardian of Mrs. Bowman for the balance of her share of her father's estate, and was delivered to her by her guardian with instructions that she must keep it as her own separate property. The defendants insist that the husband's possession of such a bond was evidence that the wife had given it to him. There was no direct evidence of the gift—no assignment or transfer in writing either formal or informal, and no witness to the gift. The court were asked to

5 P. F. SMITH—27

instruct the jury that they ought to infer the gift from the fact of possession, taken in connection with the other two facts that the parties lived together amicably until Bowman fell into gross intemperance, and that she had given him and he had squandered all the money she had received from her father's estate.

We think the cause was put to the jury quite as favorably to the defendants below as they had any right to expect. The possession of the bond was not a conclusive circumstance. We have often said that the intimacy of the marriage relation is such, and that husband and wife do so habitually act as the agent for each other, that her possession of his moneys, securities and property is of itself very slight evidence of a transfer of the ownership, and when it is remembered that the husband is the master of the house his possession of her chattels ought perhaps to be considered still less evidence of title in him. Nor is the inference of ownership strengthened by the circumstance of amicable relations, for these would be promoted by leaving her patrimony in her own hands, and would be endangered by his attempts to get it away from her. Still less is the inference of a gift strengthened by the circumstance that the husband had squandered her cash on his intemperance, for whilst she may have been persuaded to give him her ready money, or he may have obtained it by virtue of his power over her, every dollar of it that he wasted would make it less likely that she would give him the bond that represented all she had left.

Besides all this, the possession which the husband had of this bond was very equivocal. Even in the lucid intervals of the madness to which his intemperance had driven him he could not tell where the bond was, he could only suggest the places in which it might be found, and it was at last found in a portfolio of which the wife must have had some sort of possession, for she produced it to be searched. Too much was attempted to be deduced from such a possession. The court submitted all the evidence to the jury, with intimations of opinion upon its effect as they had a right to give, and the jury having found against the gift, there is no just ground of complaint.

The declarations of the husband were properly admitted, for they were evidence against himself, and they were submitted to the jury with a salutary caution. Even if erroneously admitted they were harmless, for independently of them the affirmative proofs failed to establish a gift. And this was what the defendants had undertaken to prove. It is argued that the bond being in possession of the husband the burthen of proof was on the wife, but we think rather that the bond being confessedly the separate property of the wife, the burthen of proving title to it in the husband was on the defendants.

The surety was held to the same measure of liability as the

[Bachman *v.* Killinger.]

principal, and the evidence failing in the judgment of both court and jury to prove the principal released, the surety remains bound.

The judgment is affirmed.