Powell's Appeal.

Powell's Appeal.

Firey's Appeal.

| 98 | 403 |
|----|-----|
| 127 | 219 |
| 98 | 403 |
| 177 | 462 |
| 98 | 403 |
| 182 | 550 |

1. A release executed by a married woman, of a legacy charged upon land cannot, under the provisions of the Act of April 26th 1850 (P. L. 581), be recorded unless it be separately acknowledged by her in accordance with the provisions of the Act of February 24th 1770 (1 Sm. L. 307).

2. A married woman may, at her husband's request, execute to him a valid and effectual release of a legacy charged upon land whereof he is seised, without his joinder and without a separate acknowledgment.

3. Where there is no consideration for such a release, and the married woman does not intend the same as a gift, it is invalid as to her husband, and as to such of his judgment creditors as stand on his footing.

4. As to such of her husband's creditors as have advanced their money, subsequent to the execution of the release, with knowledge thereof, and on the faith of the same, the married woman will be estopped from denying its validity.

5. As to such of those creditors, however, as do not appear to have loaned their money with knowledge and on the faith of the release, the married woman is not estopped from denying its validity.

6. A recorded paper, defectively acknowledged, is constructive notice to no one.

7. Circumstances under which a married woman who has executed a release, such as above described, is not entitled to claim interest on her legacy as against her husband's creditors, considered.

June 16th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEALS from the Common Pleas of *Franklin county :* Of May Term 1881, Nos. 182, 183.

Appeals of Joanna Powell and of Anna M. Firey, executrix of Solomon Firey, deceased, from a decree distributing the pro-

ceeds of certain real estate sold under the order of the court by B F. Winger and Alexander Schafhert, assignees of Benjamin M. Powell, under a deed of voluntary assignment for the benefit of creditors.

Before the auditor, F. W. Patton, Esq., the following facts appeared in evidence: Daniel Stahl died November 1st 1853, seised of a certain farm in Antrim township, Franklin county. By his will, which was duly admitted to probate, Stahl directed said farm to be sold by his executors within two or three years after his decease, and further provided as follows:

"After the sale of the large farm I allow $3,000 to remain in said farm, and the interest arising from said $3,000 I allow my wife to receive annually, . . . . . and after the death of my widow I allow the said $3,000 to be equally between my children."

Testator left him surviving a wife and two daughters, Malinda Catherine, who was unmarried, and Joanna, who had intermarried with Benjamin M. Powell. In 1856 Stahl's executors sold and conveyed the farm to said Powell, charged as directed by the testator. On November 4th 1868 testator's widow died. In 1869 Powell paid Malinda Catherine Stahl the sum of $1,500, being her share on the charge upon the farm. He paid his own wife nothing, nor did she demand it of him.

Powell about this time became embarrassed financially, and the following judgments were entered up against him, constituting liens upon the farm:

Elizabeth Powell, No. 171 August T., 1871 . . . $231 00
Rebecca McKee, No. 218 December T., 1874 . . . 500 00
A. L. Irwin's use, No. 198 May T., 1875 . . . . 550 00
H. S. Stoner, No. 171 December T., 1875 . . . 1,000 00

After the entry of these judgments Mrs. Powell, on October 28th 1875, executed a release to her husband of her interest in the charge on the farm. This release was under seal, was attested by one subscribing witness, and was accompanied by the following certificate of acknowledgment:

*Franklin County, ss.*

Before me, the subscriber, one of the Justices of the Peace in and for said county, personally appeared the within named Joanna Powell, and acknowledged the foregoing written instrument of consent signed by her to be her act and deed, and that the same was done without any coercion of her husband, Benjamin M. Powell, and desired that the same might be recorded as such; and I certify that the same was done and executed before me, before the signing and execution of the written in-

denture, release or deed of conveyance; and further, the said Joanna Powell acknowledged the release separate and apart from her said husband. In testimony whereof, I have hereunto set my hand and seal, this twenty-eighth day of October, A. D. one thousand eight hundred and seventy-five.

JOHN G. WALLECH, <i>J. P.</i>   [Seal.]

Mrs. Powell testified as to the execution of this release, inter alia, as follows: "This is my signature to paper. Husband gave me a paper at our house. My husband said I should take the paper to Col. B. F. Winger. Said I should give the paper to him. He gave me no directions about signing the paper. He said I should sign it; it would be all right. We went to Greencastle. I gave Col. Winger the paper in his office. I don't remember signing the paper. I don't remember Esquire Wallech being in Mr. Winger's office the same day. I don't remember of Col. Winger reading the paper over to me. I don't remember seeing that paper afterwards. If I released my share of that dower that day I know nothing about it. If I did release that day I never understood anything. My husband never paid me any part of that dower. I never got any money on account of my share of that dower—before I signed the paper—at the time—nor afterwards. My husband did not tell me who had written the paper. He (my husband) gave me no reason why he wanted me to sign the paper. He did not tell me what was in the paper."

Witness also testified with regard to her joinder in a deed to other parties for thirty acres of said farm, that she had signed it because her husband told her that if she did not, she might look out for herself.

John G. Wallech, Esq., testified with reference to the execution of the release as follows: "I know Mrs. Joanna Powell. I took her acknowledgment. The acknowledgment is in my hand-writing. She appeared before me personally. She came, I think, to my office and asked me to come to Winger's office. I am not certain this was the time she came after me. She did come once. Her husband was not with her. I examined her separate and apart from him, and even separate and apart from her attorney. Before taking the acknowledgment I made known the contents. I commenced and read to her until I saw the import of the release, and she said to me while I was reading that it was not necessary, that she understood it all. This occurred in Col. Winger's back office. We came out of the back office and then she signed it in presence of Col. Winger. She said to me, while separate and apart from every one, that she signed same of her own free will and accord, and without any coercion or compulsion on the part of her said husband."

· The auditor found as a matter of fact that Mrs. Powell received no consideration for the release and that there was no competent evidence that she had a knowledge of its contents. The release was on October 30th 1875 duly recorded.

After the execution and recording of the release the following judgments were entered against Powell:

| | | |
|---|---:|---:|
| E. B. Winger, No. 144 September T., 1876, . . . | $400 | 00 |
| John S. Grove, No. 56 September T., 1876, . . . | 359 | 45 |
| James K. Wilson, No. 393 September T., 1876, . . | 486 | 00 |
| Solomon Firey's ex'rs, No. 51 February T., 1877, . . | 992 | 53 |
| Samuel M'Creery, No. 100 February T., 1877, . . | 315 | 00 |
| Samuel M'Creery, No. 101 February T., 1877, . . | 284 | 93 |

M'Creery testified that his first judgment No. 100, was entered upon a judgment note, dated April 22d 1875, prior to the date of the release. He testified, however, as to his second judgment, No. 101, that it was entered on a judgment note, dated February 1st 1876, and that he had advanced money to Powell thereon, simply because of Powell's representation that his wife had released her interest in his land.

The judgments of Wilson and Firey's executrix were also entered up for loans made to Powell after the date of the release, but it did not appear, whether said loans had been made in view of the release or on the faith of it.

On January 7th 1877, said Powell and wife conveyed said farm to Winger and Schafhert, by a voluntary deed of assignment for the benefit of Powell's creditors, reserving, however, the wife's interest in the same. Afterwards said assignees sold the said farm under order of court, free and discharged of all liens, for $5;971.21, which amount constituted the fund to be distributed.

Mrs. Powell claimed out of the fund the sum of $1,500, with interest from the date of the death of Stahl's widow. Upon this point the auditor reported, inter alia, as follows : "From the testimony it appears that Mrs. Powell did not have her own free will in the execution of the release. It is true she signed it out of the presence of her husband, but she swears that her husband told her unless she did sign 'she must look out for herself.' Taking this to be true, we think it negatives the certificate of the magistrate that she executed the same 'without any coercion of her husband, Benjamin M. Powell;' but outside of this, the certificate of acknowledgment is fatally defective, in that it does not set out that the contents were made known to said Joanna Powell. It is held that the fact that the contents were made known to a feme covert must substantially appear on the face of the certificate : Steele *v.* Thompson, 14 S. & R. 92; also Shaller

[Powell's Appeal.]

v. Brand, 6 Binn. 438; Evans v. Com'th, 4 S. & R. 272; Watson v. Mercer, 6 S. & R. 48; Fowler v. M'Clurg, 6 S. & R. 143; Jourdan v. Jourdan, 9 S. & R. 270.

"An attempt was made to supply the defect in the acknowledgment by the testimony of the magistrate who took the acknowledgment.. This testimony is ruled out. It is incompetent to supply the defect appearing on the face of the certificate by parol testimony: See Watson and wife v. Bailey, 1 Binney 470; Jourdan v. Jourdan, supra; Barnett v. Barnet, 15 S. & R. 72; Loudon v. Blythe, 4 Harris, 541. Your auditor, therefore, holds that the paper is void for the purpose of release of any interest in real estate. But it is urged that the interest which Joanna Powell had in said farm was not such an interest in lands as required an acknowledgment. Your auditor thinks that Mrs. Powell, a married woman, could only release this interest in the dower, or whatever it was, by a release acknowledged in accordance with the provisions of the Act of Assembly relating to conveyances of real estate by married women. That she could not sell or release to her husband directly, because, this being an interest in land, *both* must sign, and it is also invalid as a release of her interest, because it is not signed by her husband, who was then living. . . . But it is claimed that Mrs. Powell's interest in the land was a chose in action, and that she could give it to her husband. We answer that even it was a chose in action, it was not such *an article as would pass by mere delivery*, and therefore the method must conform to the mode prescribed by law, which in this case would be by deed or release, *properly* acknowledged: Hinney v. Phillips, 14 Wr. 382.

"But it was no gift, nor intended to be such, by either husband or wife. . . . But it is urged that the release which she signed should estop her from pressing her claim until all the judgment creditors who loaned money on the *faith of the release* are satisfied. We cannot agree to this. A judgment creditor is *not a purchaser*, and would not be protected by knowledge of the release; but the only evidence your auditor has that any one judgment creditor loaned their money on the faith of the release, is Mr. Samuel M'Creery. He testifies that he knew of the lien upon the land in favor of the wife, and did not loan money until he was informed by *Mr. Powell* that the wife had released her claim. Now, if Mr. Powell told Samuel M'Creery that, he acted badly, because the record shows that the money of Mr. M'Creery was loaned, or at least the single bill dated 22d April 1875, six months before the release was executed, and Mr. Powell's statement could not have been true. That being so, and the release at that time not being executed, Mr. M'Creery might have loaned his money on the faith of what

Mr. Powell said to him about the release, but not on the faith of the release actually executed. And your auditor holds that what Mr. Powell said, out of the presence of Mrs. Joanna Powell, could not prejudice her claim in any way."

The auditor accordingly, after deducting the costs of audit, awarded to Mrs. Powell the full amount of her claim out of the fund, viz. : $2,317.50. The residue he distributed to the judgment creditors of Powell in the order of their priority, paying Elizabeth Powell, Rebecca McKee, A. L. Irwin, H. S. Stone, E. B. Winger and John Hade in full, and awarding to Wilson on account $65.93, which exhausted the fund. To this report exceptions were filed on behalf of Wilson and the judgment creditors whose claims were not reached in the distribution, on the ground that the auditor had erred in allowing to Mrs. Powell the amount of her claim with interest.

The court, ROWE, P. J., was of opinion that the release was good in substance and form, and that is was duly executed and acknowledged; but that, Mrs. Powell having received no consideration therefor, and not having intended to make a gift, the same was invalid as between her and her husband or his judgment creditors.

As to M'Creery, the court held, however, that he having advanced the money represented by his second judgment subsequent to the release and on the faith thereof, Mrs. Powell was estopped as to him from setting up its invalidity. As to the other judgment creditors subsequent to the release who were not shown to have so acted, the court held that the principle of estoppel could not be invoked. The court also disallowed Mrs. Powell's claim for interest.

The matter being recommitted to the auditor for redistribution in accordance with the views expressed in the opinion of the court, he deducted the sum of $817.50 from the amount previously awarded to Mrs. Powell, being the interest on her claim, and applied $453.36 thereof to satisfy that portion of Wilson's judgment remaining unpaid. The residue, viz. : $334.14, he applied on account of the judgment of Solomon Firey's executrix, which was the next in priority of lien. He also deducted from the allowance of $1,500 to Mrs. Powell the sum of $303.67, which he awarded to M'Creery in payment of his second judgment with interest. A report embracing the redistribution was filed and was duly confirmed by the court.

Joanna Powell thereupon took an appeal, assigning for error the deduction of M'Creery's second judgment from her claim, and the awarding of the same to him, and also the refusal to allow her interest on her claim.

Anna M. Firey, executrix, also-took an appeal, assigning for

[Powell's Appeal.]

error the action of the court in allowing Mrs. Powell's claim, and in not awarding the amount of that claim to the judgment of Firey's executrix.

*J. McD. Sharpe*, for Joanna Powell.—The release was not good in substance or in form.   Appellant's interest in the land was of such a character that she might have brought ejectment: Kensinger *v.* Smith, to use, 9 W. N. C. 312; Bear *v.* Whisler, 7 Watts 144; Perry *v.* Scott, 1 P. F. Smith 124; Soper *v.* Guernsey, 21 P. F. Smith 220; Watters *v.* Bredin, 20 P. F. Smith 235.   It was in the nature of a mortgage:   Moore *v.* Cornell, 18 P. F. Smith, 320.   And could not therefore be released or assigned except by an instrument with a proper separate acknowledgment:   Moore *v.* Cornell, supra;   Stoops *v.* Blackford, 3 Cas. 213; Buchanan *v.* Buchanan, 10 Wright, 186; and with the joinder of the husband: D. L. & W. R. Co. *v.* Burson, 11 P. F. Smith 369.

Assuming that it was but a legacy, then under the provisions of the act of April 26th 1850, § 24 (P. L. 581), in order to entitle the release to be recorded, it was necessary that it should be acknowledged as provided by the act of February 24th 1770, § 2 (1 Sm. L. 307).

In the present case the certificate fails to state that the contents of the release were made known to the appellant.   This was fatal.   See Watson *v.* Bailey, 1 Binney 470; McIntire *v.* Ward, 5 Binney 301; Shaller *v.* Brand, 6 Binney 438; Evans *v.* Commonwealth, 4 S. & R. 272; Thompson *v.* Morrow, 5 S. & R. 289; Watson *v.* Mercer, 6 S. & R. 48; Steele *v.* Thompson, 14 S. & R. 92; Jourdan *v.* Jourdan, 9 S. & R. 273; Miller *v.* Wentworth, 1 Norris 280; Hornbeck · *v.* Building Association, 7 Norris 64.

Defects in the certificate cannot be supplied by parol evidence.   See Jourdan *v.* Jourdan, 9 S. & R. 274; Watson *v.* Bailey, 1 Binney 470; Barnet *v.* Barnet, 15 S. & R. 72; Williams *v.* Baker, 21 P. F. Smith 481; Herter *v.* Glasgow, 29 P. F. Smith 82; Singer Manufacturing Co. *v.* Rook, 3 Norris 445; Hornbeck *v.* Building Association, 7 Norris 64.

If, then, this release was not properly executed and acknowledged, the appellant cannot be estopped by it: Glidden *v.* Strupler, 2 P. F. Smith 400; Dunham *v.* Wright, 3 P. F. Smith 167; Kirk *v.* Clark, 9 P. F. Smith 479; Colburn *v.* Kelly, 11 P. F. Smith 314; Graham *v.* Long, 15 P. F. Smith 383; Williams *v.* Baker, 21 P. F. Smith 476.

M'Creery stood in his creditor's shoes: Cover *v.* Black, 1 Barr 493; Reed's Appeal, 1 Harris 478; Morris *v.* Ziegler, 21 P. F. Smith 453; Ludwig *v.* Highley, 5 Barr 132; Dimm's &

King's Appeal, 9 Norris 367; Shrewsbury Savings Inst's Appeal, 9 W. N. C. 166. The release, being void as to Powell, was also void, therefore, as to M'Creery. There was nothing to estop appellant as against M'Creery. She did nothing active. M'Creery relied exclusively on Powell's representations.

Under the peculiar circumstances appellant should have been allowed interest on her claim: May *v.* May, 12 P. F. Smith 213; Hamill's Appeal, 7 Norris 363.

*Brewer and Winger*, for Firey's executrix.—The release was not obtained by fraud or duress, but was, in substance, a gift by the wife to her husband. The interest released was a mere legacy, and not an estate in land: Pierce *v.* Gardner, 2 Norris 211. Therefore the release did not require a separate acknowledgment under the act of 1770: Bond *v.* Bunting, 28 P. F. Smith 210; Haffey *v.* Carey, 23 P. F. Smith 431. Brown's Appeal, 9 W. N. C. 329. A married woman cannot repudiate a gift fairly made: Fryer *v.* Rishell, 3 Norris 521; Dando's Appeal, 9 W. N. C. 5. The release was a recordable instrument, and being spread on the record gave notice to all parties dealing with Powell that his wife's claim was released. She is estopped from denying the validity of the release as to such persons: Pepper's Appeal, 27 P. F. Smith 373; Pryor *v.* Wood, 7 Cas. 142; Pelty *v.* Struthers, 6 Harris 278; Water's Appeal, 11 Casey 523; Brown's Appeal, 9 W. N. C. 329. Mrs. Powell is further estopped by her laches: Coates *v.* Gerlach, 8 Wright 46.

The acknowledgment of this release is a substantial compliance with the provisions of the act of April 11th 1848 (P. L. 536). It is not invalidated by the mere want of consideration: Lytle's Appeal, 12 Cas. 131.

Mrs. Powell is certainly estopped by her laches from claiming interest: Hamill's Appeal, 7 Norris 363; May *v.* May, 12 P. F. Smith 206.

Mr. Justice PAXSON delivered the opinion of the court, October 3d 1881.

It was contended that the release of Joanna Powell in her husband's favor for the one half of the legacy of $3,000 charged upon his land was invalid for the reason that it was not properly acknowledged. The acknowledgment was made before a justice of the peace, who certified that before him "personally appeared the within named Joanna Powell and acknowledged the foregoing instrument of . . . signed by her to be her act and deed, and that the same was done without any coercion

of her husband Benjamin M. Powell, and desired that the same might be recorded as such, . . . and further the said Joanna Powell acknowledged the release separate and apart from her said husband." It is true the justice does not certify that the contents of the paper were made known to Mrs. Powell, as required by the act of Febuary 21st 1770. That this omission is a fatal defect in conveyances of real estate, is decided in numerous cases. I cite only two of the recent ones : Miller *v.* Wentworth, 1 Norris 280 ; Hornbeck *v.* The Building Association, 7 Id. 64. This, however, was not the case of a conveyance of land. Mrs. Powell had no dower in her father's estate and could have none. What she held was a mere legacy. That it was charged upon land makes no essential difference. A release of a legacy charged upon land is within the recording acts. The act of 15th of April 1828, authorizing such releases to be recorded, requires that they shall be executed " before at least two competent subscribing witnesses." The present release has but one subscribing witness, and does not come within the act : Hellman *v.* Hellman, 4 Rawle 440. Section 24 of the Act of 26th April 1850, P. L. 581, authorizes the recording of such releases only when they " shall have been duly acknowledged or the execution thereof proved by the existing laws for the acknowledgment and proof of the execution of deeds or other instruments of writing concerning any lands or tenements," &c. As the release of Mrs. Powell was not so acknowledged it is manifest the Act of 1850 does not apply, nor is the case affected by the Act of April 11th 1848. The acknowledgment by the wife referred to in said act is when the husband seeks to convey or incumber her separate estate. The first section of the Act of 11th April 1856, P. L. 315, repeals so much of the Married Woman's Act of 1848 as provides that the acknowledgment of a deed or mortgage conveying the separate estate of a married woman may be made differently from her acknowledgment when joining her husband in conveying his real estate.

This release is not void, however, because not so acknowledged as to bring it within the recording acts. As before observed, it was not a conveyance of an interest in lands. It concerned personal property, was a mere chose in action, and as such within her own control with the consent of her husband. As this release was made to her husband, at his request, and for his benefit, his consent is to be presumed. It was held in Bond *v.* Bunting, 28 P. F. Smith 210, that a married woman, her husband joining therein, could assign her choses in action without acknowledgment of any kind, and the distinction is there pointed

out between a chose in action and a mortgage; the latter, though a security for money, is a conveyance of land.

This release is sufficient in form, however defective the acknowledgment may be. It was said to be invalid, however, for the reason that it was not executed by Mrs. Powell of her own free will; that she did not know what she was signing, and that she received no consideration therefor. And it was urged that if the release was invalid as to her husband it was equally so as to his judgment creditors who merely stand upon the foot of their debtor.

The only witness called to attack the release was Mrs. Powell herself, who, although incompetent, was permitted to testify by agreement. Giving entire credit to what she says, she fails to show any fraud practiced upon her in the acknowledgment, or any coercion on the part of her husband prior thereto. The substance of what she says is that she did not receive any money; that her husband told her to sign the release, and that it would be all right. It is true the learned auditor finds that her husband told her if she did not sign it "she must look out for herself." In this the auditor made a mistake. The words referred to had reference to a deed of thirty acres of land her husband desired to convey, and not to this release. Mrs. Powell took the release to the justice, unaccompanied by her husband, and executed and acknowledged it in the presence of the former. The justice was examined, and testified that she acknowledged the release voluntarily, and that, when he commenced to explain to her the contents of the paper, she interrupted him and stated she understood it; that it was a release of her dower. Mrs. Powell does not essentially contradict him otherwise than by the convenient "I don't know." There is not a scintilla of evidence to show fraud or coercion on the part of her husband, yet if Mrs. Powell is believed there was no consideration for the release. There certainly is no proof she ever received the $1,500, and the auditor does not find she intended it as a gift. We must, therefore, hold the release invalid as to her husband. Is it so as to his judgment creditors?

We think it very clear that so far as such creditors have loaned their money upon the faith of the release they are entitled to priority over Mrs. Powell in the distribution of this fund. It is true a judgment creditor stands upon the foot of his debtor so far as title is concerned; but this rule has no application where a third person has misled the creditor as to the condition of the title and thereby induced him to lend his money on the faith of it. Samuel M'Creery had actual knowledge of the release, and took one of his judgments and

loaned the money on the faith of it.   As to him Mrs. Powell is estopped from setting up her release.   It is true she was a married woman, and the general rule undoubtedly is that the doctrine of estoppel does not apply to such persons.   But there are exceptions.   The rule rests upon the fact that a married woman cannot contract.   It follows logically that what she cannot pass by contract she may not pass by estoppel.   But where the law clothes her with the power to contract, to the extent of that power she is bound precisely as other persons are bound.   The law gives her the right to dispose of her personal estate with the assent of her husband.   In doing so she has no more right to injure and mislead others than if she were *sui juris*. To hold otherwise would enable her to continue her operations with her separate estate so long as they were profitable, and then make reprisals for her losses upon those who had trusted her.   Brown's Appeal, 9 W. N. C. 329, distinctly recognized this principle.   There a married woman who held a judgment against certain real estate agreed in writing that the lien of her judgment should be postponed to the lien of a subsequent judgment.   After the money had been loaned on the faith of her agreement she attempted to repudiate it on the ground of her coverture.   This court held that as she had the absolute control of her judgment, could satisfy it at will, she could also postpone, and, as an innocent party had acted upon the faith of her conduct, she was estopped from claiming a first lien.

It does not appear that any of the other creditors loaned their money upon the faith of the release, nor that they had knowledge of it.   Not having been duly acknowledged it must be treated as an unrecorded paper.   Hence, no question arises as to constructive notice to the creditors, and actual notice is not pretended.

We see no error in the refusal of the court below to allow interest on Mrs. Powell's claim.   The authorities cited by him are sufficient to sustain his ruling.   See May *v.* May, 12 P. F. Smith 206; Bachman *v.* Killinger, 5 Id. 414.

The decree is affirmed and the appeals dismissed at the costs of the respective appellants.