Walter Stuart, Trustee, successor of Joseph A. Stuart, surviving executor of the Estate of John Stuart, deceased, Appellant, *v.* Joseph A. Stuart and George P. Searight.

*Husband and wife—Mortgage—Interest—Gift.*

Where a wife had bequeathed to her a mortgage against her husband on land on which the husband and wife lived together, and the evidence showed that the husband had paid his wife the interest for some years, and then quit, but that he had never made any promise to pay interest, except the formal promise to his wife's testator contained in the bond and mortgage, and further, that the husband had always supplied his wife with the money for necessaries for herself and family which she regarded as in lieu or satisfaction of the interest on the mortgage, the presumption is that the wife did not intend to claim interest, and therefore she cannot collect it from the sheriff's vendee of the farm, except from the date of the sale.

Argued April 28, 1897. Appeal, No. 99, Jan. T., 1897, by plaintiff, from judgment of C. P. Cumberland Co., May T., 1896, No. 572½, on verdict for defendants. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Feigned issue to determine whether interest was due upon a mortgage.

The facts appear by the opinion of the court below and of the Supreme Court.

The jury rendered a verdict for plaintiff for $3,444 and also found specially as follows : " Q. Was interest actually paid by Mr. Searight to his wife ? A. Yes, to date April 1, 1877. Q. Did he promise his wife that he would pay her interest ? A. No.

" The jury also agree that if the court shall be of the opinion upon the point reserved, that interest cannot be recovered either in whole or in part before April, 1891, the verdict may be reduced to the proper amount and judgment may be entered thereon."

McPHERSON, J., of the 12th judicial district specially presiding, filed the following opinion on the question of law whether interest could be recovered in whole or in part for a period prior to September 11, 1891, the date of the sheriff's sale of the premises :

John Stuart, who was the father of Mrs. Geo. P. Searight, lent Mr. Searight $5,000 in February, 1863, securing the loan by two bonds and the mortgage now in suit, each instrument. containing the usual promise to pay interest. One bond was for $3,000, and was bequeathed by Mr. Stuart, who died in 1870, "in trust to and for the use of my daughter, Martha Ann Searight, during her natural life, and at her death I direct that the same shall be divided so that each of her children shall receive the same sum when it arrives at the age of twenty-one years, and if none of them live to that age this legacy shall lapse."

Mr. and Mrs. Searight were living upon the mortgaged farm in 1870, and continued to live thereon until 1881 when they removed to Carlisle. Mr. Searight owned little other property, and from this farm his wife and family were largely supported,

not only while they lived upon it, but afterwards until the farm was sold by the sheriff in September, 1891. At that sale it was bought by the defendant, Joseph A. Stuart, who is now in possession and admits his obligation to pay interest from the date of his purchase. But Mrs. Searight claims interest also from April, 1872 (choosing that date for a reason not now important), to the time of the sale; and the controversy is about this item. The validity of the claim was reserved at the trial, and all the facts relevant to its determination have now been stated, except the facts specially found by the jury, namely, that although Mr. Searight paid interest to his wife to April 1, 1877, he never promised her that he would pay. The payments were voluntary, and not in pursuance of a contract made with her.

Under the decisions in Pennsylvania, it is clear that if it were not for the formal promise to pay interest contained in the bond given to John Stuart, there is not even a color of support for this claim. A promise to pay might indeed have been inferred from the fact of payment, but there was no other evidence of a promise than this, and the jury have distinctly declared that the inference is not to be drawn. On the contrary, the fact is positively found that no such promise was made, and therefore (aside from the bond and mortgage) Mrs. Searight could not recover this interest from her husband, because he did not owe it; or from the purchaser at the sheriff's sale, because his obligation is not greater than Mr. Searight's. It is argued, however, with much urgency that the bond and mortgage contain a positive promise to pay interest, and that although the promise was not made to the wife, but to John Stuart, nevertheless it must be treated as a promise made to her, because during life she is the equitable owner of the bond, and therefore may enforce every one of its terms. This is an assumption of the point in dispute. In our opinion it does not follow that because her husband promised to pay interest to John Stuart, Mrs. Searight may sue upon the promise and recover as if it had been actually made to her. On the contrary, we think that when John Stuart bequeathed this mortgage to his daughter, the effect was in substance as if he had bequeathed to her a sum of money of like amount and she had lent it to her husband. With reference to the mortgage her husband had

had no dealings with her. He had promised to pay interest, not to her, but to her father; and to suppose that she necessarily succeeded to her father's right to enforce this promise is wholly to ignore the effect of the family relation upon the interest which she acquired. In substance, the situation is the same as if her money had come in actual cash into her husband's hands, and its income had been used by him for the support of the family.

The precise point was decided by Judge PEARSON in Bachman v. Killinger, 55 Pa. 414. The facts were these: John W. Killinger was guardian of Emma Bachman, and lent $3,000 of her money to C. L. Bowman, taking from him a bond for this amount with sureties. Afterwards Bowman married Emma Bachman, and two or three years after the marriage her husband's bond was delivered to her in the settlement of Mr. Killinger's trust. Suit was afterwards brought upon the bond for the use of the wife, and Judge PEARSON instructed the jury upon the subject of interest as follows: "Does this bond bear interest from its date? As a general rule, the obligation of a husband to his wife will not. If the husband receives the interest due on his wife's money, the inference is that it is for their mutual support, and that of their family. In several reported cases it has been held that the husband's notes or acknowledgment of indebtedness to his wife did not bear interest; in one reported case, that it will, where such appears to have been the contract. This bond is drawn with interest, but that was because the guardian might be called on to pay interest to his ward. After the bond went into her hands, it would cease as against the husband. Had he died, and the wife sued his representatives, she could not have recovered interest during his lifetime, but would from his death. Her claims are the same against his sureties. If, therefore, you find a verdict for the plaintiff, it will be without interest." It is quite true that these instructions were not assigned for error and were not discussed by the Supreme Court, but the case is cited as an authority upon the subject of interest in Powell's Appeal, 98 Pa. 403, where the facts were essentially the same, and we understand this to be an approval of Judge PEARSON's decision.

Upon reason also it seems to be correct; for it is a mere extension of the equitable principles upon which the court has

put the husband's exemption from liability to pay interest. These principles have been announced in a line of cases from McGlinsey's Appeal, 14 S. & R. 64, to Moore v. Moore, 165 Pa. 464. For example, in Hamill's Appeal, 88 Pa., on p. 366, it is said : " But she permitted the use of the money without stipulation as to terms. She was living with her husband in the usual family relation, and she derived her support from the proceeds of the business. In the absence of proof of some agreement, a return of the principal only can be enforced." And in Hauer's Estate, 140 Pa. 420, where the subject is fully considered, the rule is thus stated by Mr. Justice McCollum: "It lies on (the husband) to show the agreement which relieves him from payment of the principal; and on her to show the agreement which entitles her to interest, but the agreement in either case may be implied from the circumstances attending the transaction." In that case a wife who permitted her husband to receive and use as his own the rents of her separate property was not allowed to recover them from his estate without proof of an agreement that he was to account for them, the presumption being that they were used to maintain the family, and had been given to the husband for that purpose. It was distinctly said that express or direct proof of her acquiescence was unnecessary; that acquiescence would be implied from circumstances and from a course of conduct consistent with it and opposed to any other conclusion; and that it was sufficiently shown when it appeared that the receipt of the rents was with her knowledge and could have been prevented by her if she had desired to do so. In Wormley's Estate, 137 Pa. 101, the court refused to permit a wife to claim interest on her money, because she permitted her husband to have the use of it without any claim for interest, and indirectly at least had shared in the benefit derived from its use. The subject was again examined in Kittel's Estate, 156 Pa. 454, and the rule is repeated in this language: "In settlements between husband and wife, in the absence of proof to the contrary, equity presumes that interest money on the wife's separate estate, which has been received by the husband, has been expended by him with her consent, for the support of herself and her family. . . . Neither the statute of 1848 nor that of 1887 has worked any change in this particular. As the reason grows out of the duties incident

to the duties of the domestic relation, so long as these remain unchanged, unless there be express statutory enactment, the presumption will continue." The most recent case is Moore v. Moore, 165 Pa. 464, where the wife was refused interest upon her money contributed to the purchase of the property in which the family lived, and as long as they continued to use it as the common home.

In the present case it is certain that Mrs. Searight acquiesced in the use which her husband made of his income from the mortgaged farm; and it is certain also that she did not intend to make any claim for interest against her husband, for she testified to that effect in positive terms. Under these circumstances it would be most inequitable to allow a recovery now. She has enjoyed the benefit of the income during the years in question, without requiring any part of it to be applied to the payment of interest on her mortgage; and under the ruling in Hauer's Estate she cannot recover without proof of an agreement that her husband was nevertheless to pay the money which she now claims.

Without further discussion, we hold that no interest can be recovered for the period from April, 1872, to September 11, 1891; and in accordance with the authority given by the jury, we reduce the verdict to the sum of $824, being the interest from September 11, 1891, to May 19, 1896, the date of verdict. July 22, 1896, in accordance with said decree, judgment is entered in favor of the plaintiff for $824, an exception being sealed for the plaintiff on the point reserved in reference to the interest.

Plaintiff appealed.

*Error assigned* was in reducing the verdict to $824.

*W. F. Sadler*, with him *W. Trickett*, for appellant.—When with no consent on the part of the wife, the husband gets her property, or, if consenting that her husband receive her property, the wife requires that interest shall be paid, it must be paid: Towers v. Hagner, 3 Wharton, 48; Reber's Est., 143 Pa. 308; May v. May, 62 Pa. 206; Wormley's Est., 137 Pa. 101; Mellinger v. Bausman, 45 Pa. 522; Grabill v. Moyer, 45 Pa. 530; Moyer's App., 77 Pa. 482; Beaver v. Slear, 168 Pa. 466; Moore v. Moore, 165 Pa. 464.

*John Hays*, with him *H. S. Stuart*, for appellee.—Income from separate estate of a wife received by her husband is presumed to be used in support of the family: McGlinsey's App., 14 S. & R. 64; Hinney v. Phillips, 50 Pa. 363; Kittel's Est., 156 Pa. 445; Moore v. Moore, 165 Pa. 464; Ellis v. Martin, 170 Pa. 129.

There must be a promise, express or implied, to account for it, or a living apart: Hauer's Est., 140 Pa. 420; Hamill's App., 88 Pa. 363.

The rule is the same where the husband is trustee for the wife or where the wife holds a bond of the husband given before marriage: Bachman v. Killinger, 55 Pa. 414; Powell's App., 98 Pa. 403.

OPINION BY MR. JUSTICE McCOLLUM, October 11, 1897:

There was no agreement between the husband and wife that he should pay to her, or her trustee, interest on the mortgage. The jury found that he actually paid interest on it to April 1, 1877, but this finding was based on an inference from the testimony in regard to the receipts given by her and her declarations to the effect that she used her interest money to buy clothes for the family. The finding, however, was flatly opposed to the direct and positive testimony of the husband, his wife, and her trustee. The receipts did not actually represent payments of interest on the mortgage; they were given for the purpose of protecting the trustee and strengthening the husband's credit. The declarations of the wife concerning her interest money and the investment of it in clothing for the family were seemingly, but not absolutely, inconsistent with her testimony. They were reconcilable with the uncontradicted testimony of her husband that he furnished her the money with which the clothing for the family was purchased. Possibly she may have referred to the money thus provided, as her interest money, but she emphatically denied that she ever made to any person a declaration or statement of this nature. Assuming that the declarations were made as claimed, there was no necessary sequence from them which discredited the testimony of the husband and wife in relation to the payment of interest money. On the contrary, the declarations considered in connection with this testimony tended to show that the husband had always supplied his wife with the

money needed for the purchase of clothing for herself and family, and that she regarded the same as in lieu or satisfaction of interest on the mortgage.. The husband distinctly testified that he had never given her money "in the way of interest," and there is nothing in the evidence which shows that she or her trustee ever demanded or requested payment of it prior to 1891. In corroboration of the view that no interest was paid we have the wife's admission that she never intended to push her husband for it, and undisputed evidence that the income from the farm incumbered by the mortgage was devoted to the maintenance of the mortgagor and his family. The fair inference from all the testimony is that the entire income derived from the labor and property of the husband was required for their support, and that the farm incumbered as aforesaid was all the property he had. Under the circumstances and the well-settled principles applicable to them the conclusion of the learned court below must be sustained. It is the only conclusion authorized by the testimony and consistent with justice. It is in accord with, and it gives effect to, the obvious intention and understanding of the parties prior to 1891, when the farm was sold for the husband's debts. From that time the court below properly charged the purchaser with interest on the mortgage for the benefit of the mortgagor's wife.

The testimony referred to and the decisions in the following cases furnish a complete vindication of the judgment : McGlinsey's Appeal, 14 S. & R. 64; Bachman v. Killinger, 55 Pa. 414; Hamill's Appeal, 88 Pa. 366 ; Powell's App., 98 Pa. 403; Hauer's Estate, 140 Pa. 420 ; Wormley's Estate, 137 Pa. 111 Kittel's Estate, 156 Pa. 454; Moore v. Moore, 165 Pa. 464.

Judgment affirmed.