Statement of Facts.

## ESTATE OF CHRISTOPH HAUER, DECEASED.

APPEAL BY ELIZ. SCHROYER ET AL. FROM THE ORPHANS' COURT
OF LANCASTER COUNTY.

Argued May 20, 1890—Decided March 9, 1891.
[To be reported.]

1. A plain distinction is drawn by the decided cases between the effect of the receipt by a husband of the corpus of his wife's separate property, and his receipt of the income thereof. While a gift of the principal to him will not be presumed from her mere acquiescence in his receipt and use of it, a gift of income may thus be implied.
2. A wife, who permits her husband to receive and use as his own the rents of her separate property, cannot, at his death, recover them from his estate without proof of an understanding that he was to account for them; the presumption being that they were used in maintaining the family and were given to the husband for that purpose.
3. Express or direct proof of the wife's acquiescence is unnecessary. It will be implied from circumstances, and a course of conduct consistent with it and opposed to any other conclusion; and it is sufficiently shown when it appears that the receipt of the rents was with her knowledge, and could easily have been prevented by her if she had desired to do so.

Before Paxson, C. J., Sterrett, Green, Clark and Mc-Collum, JJ.

No. 150 January Term 1890, Sup. Ct.; court below, number and term not given.

On August 18, 1888, Barbara Hauer and Thomas M. Grady, administrators of the estate of Christoph Hauer, deceased, settled an account exhibiting a balance in their hands due the estate; and, on October 4, 1888, *Mr. William Augustus Atlee*, was appointed auditor, to report a distribution of said balance among the persons legally entitled thereto.

Before the auditor, Barbara Hauer, the widow of the decedent, presented a claim for $3,227.50, with interest from October 1, 1887. The auditor found the facts in relation to this claim to be as follows:

Barbara Hauer was the owner, in her own right, of a hotel or tavern in the borough of Marietta, known as the Hauer House. Christoph Hauer rented this hotel, in his own name,

to Wm. Bowers, from January 1, 1877, to April 1, 1881; to Wm. Fletcher from April 1, 1881 to April 1, 1884; and to Samuel Larzelere and Jonathan Larzelere from April 1, 1884, to October 1, 1887, and received from these tenants the rents aggregating the amount claimed. No evidence was given showing that Barbara Hauer acquiesced in his receiving these rents, gave them to him, or permitted him to appropriate them to his own use; in fact, it was not shown that she was ever present at the transaction of any business connected with the renting of the land or payment of the rent, except on one occasion, when, as Samuel Larzelere testified, "Mrs. Hauer may have been present on one occasion when I paid him one quarter's rent; she came into the room." And she was present when the first tenant talked of renting.

It was further shown that on August 2, 1886, Christoph Hauer contracted with Simon B. Stibgen for the purchase of a house and lot of land situated on the north side of Market street, in the borough of Marietta, for the sum of $1,825; that he paid by his own check $125 at that time, and that on August 30, 1886, Simon B. Stibgen and his wife conveyed the land to Barbara Hauer by deed of that date, and Christoph Hauer paid the balance by his own check. This was all that was known of that transaction, with the exception of the testimony of Henry S. Kauffman, in substance to the following effect: On August 2, 1886, Christoph Hauer and he were together, when Hauer said, "I go out and buy a place." He went out and came back in about an hour, and said, "I have bought a house for mother," meaning Barbara Hauer, "so that when I am dead she cannot be set out on the street." Again, he said "He gives her the house."

Christoph Hauer and Barbara Hauer had no children. His death occurred on October 5, 1887.

Between 1882 and 1887 the decedent made payments for repairs, taxes, etc., upon his wife's real estate, the hotel property, amounting in the aggregate to $650.85.

Upon the facts so found, the auditor, citing a large number of authorities, reported conclusions of law in substance as follows: (1) That the relation existing between the decedent and his wife, with respect to the money in question, was that of debtor and creditor, the rule being that when a husband re-

ceives his wife's money he must be treated as receiving it for her use, and must account for it, unless he can prove a gift thereof by her to himself; and that the decision in Bardsley's Est., 7 W. N. 48, drawing a distinction, in this respect, between the receipt by a husband of the corpus of his wife's estate, and the receipt of income belonging to her, " is unsupported by reason or authority." (2) That the statute of limitations did not run against this claim, during the lifetime of the decedent. (3) That the transaction of the purchase of the house from Stibgen, in the name of Mrs. Hauer, must be regarded as a gift by the decedent to his wife, there being no evidence that it was intended as a payment on account of indebtedness; and therefore, the money paid by him for that house could not be deducted from the amount of her claim. (4) That the payments for repairs, taxes etc., made by the decedent, must be so deducted; and that, after making such deduction, the widow was entitled to receive, as creditor of her husband's estate, the sum of $2,576.65, with interest from October 5, 1887. The auditor accordingly reported a schedule of distribution, in which the sum of $2,817.98 was awarded to Barbara Hauer as a creditor.

Exceptions to the report of the auditor were overruled by the court, PATTERSON, J., and a decree entered confirming the report absolutely; whereupon Elizabeth Schroyer and others, heirs at law of the decedent, took this appeal, specifying that the court erred:

1. In allowing the widow's claim for the rents collected by the decedent.

2. In not crediting upon said claim the price of the property purchased by the decedent in the name of his wife.

4. In confirming the report of the auditor.

*Mr. Gustavus Remak, Jr.*, (with him *Mr. John A. Coyle, Mr. J. Hay Brown* and *Mr. W. U. Hensel,*) for the appellants:

1. Where a wife tacitly permits her husband to receive the income of her separate property, it is presumed that she intended to make a gift of such income to her husband, and she cannot reclaim it; especially, when her acquiescence in its receipt by her husband has continued for a term of years, and she has made no demand, express or implied, for it during such

Arguments.

period: Lewin on Trusts, Text Book Series, 776, 777, §§ 40, 41, *787, § 67; 1 Lead. Cas. in Eq., 4th Am. ed., *505, 506; In re Flamank, L. R. 40 Ch. D. 461, 469; Edwards v. Cheyne, L. R. 13 App. Cas. 385, 398; Hale v. Sheldrake, 60 L. T., N. S., 292, 294; Endlich & Richards on Married Women, §§ 215, 216; McGlinsey's App., 14 S. & R. 64; Towers v. Hagner, 3 Wh. 48, 57; Naglee v. Ingersoll, 7 Pa. 185, 204; May v. May, 62 Pa. 206, 213; Mellinger v. Bausman, 45 Pa. 522, 529; Hinney v. Phillips, 50 Pa. 382; Mann's App., 50 Pa. 375, 381; Bardsley's Est., (O. C.,) 13 Phila. 222 (7 W. N. 48); McArthur's Est., (O. C.,) 16 Phila. 403; Early v. Rolfe, 95 Pa. 58, 61; Powell's App., 98 Pa. 403, 413; Kerr's App., 104 Pa. 282, 287; Hamill's App., 88 Pa. 363, 368.

2. Where, moreover, her claim is not urged until after her husband's death, it seems no longer open to question that she cannot recover at all from her husband's estate; though for many years in England it remained sub judice whether she could not claim an account for arrears of income for one year prior to his death: Bardsley's Est., 7 W. N. 48; Edwards v. Cheyne, L. R. 13 App. Cas. 385; Caton v. Rideout, 1 McN. & G. 599; Hale v. Sheldrake, 60 L. T., N. S., 292; In re Flamank, L. R. 40 Ch. D. 461. The decisions in Pennsylvania, involving property settled to the separate use of a married woman, entirely agree with the decisions in England, and McGlinsey's App., 14 S. & R. 64, presents a state of facts almost identical with the present case. See also Naglee v. Ingersoll, 7 Pa. 185. And the decisions in England, and those in this state prior to 1848, are fully in point as to the separate estate of a married woman under the act of April 11, 1848, P. L. 536, as the act enables her to hold property as if settled to her separate use: Bear v. Bear, 33 Pa. 525; Hinney v. Phillips, 50 Pa. 382. But we are not without authority directly on the point in question: Endlich & Richards on Married Women, §§ 215, 216; Bardsley's Est., 7 W. N. 48; McArthur's Est., 16 Phila. 403; Early v. Rolfe, 95 Pa. 58.

3. It seems there is no case decided by this court in which the point under discussion squarely arose, but the distinction between the receipt of the corpus and of the income of the wife's estate is recognized in all the decisions, and all the indications of the authorities are in favor of the position we assume:

Arguments.

Mellinger v. Bausman, 45 Pa. 529; Grabill v. Moyer, 45 Pa. 530; Bachman v. Killinger, 55 Pa. 414; May v. May, 62 Pa. 206; Young's Est., 65 Pa. 101; Hamill's App., 88 Pa. 368; Powell's App., 98 Pa. 403; Meckley's App., 102 Pa. 536; Kerr's App., 104 Pa. 282. In no case has a wife been permitted to recover interest upon the corpus of her estate in her husband's possession, except when there was clear evidence of an agreement to that effect; and the like rule must apply when he receives the income, and the corpus is in the possession of others than himself. The utmost that Mrs. Hauer could recover would be the rents received by her husband after the passage of the married person's property act of June 3, 1887, P. L. 332, but it is doubtful whether she can recover anything at all: Small v. Small, 129 Pa. 366. The auditor seems to require proof of the wife's express consent to the appropriation of her rents by her husband, but simple acquiescence, without objection, has heretofore been all that was deemed requisite.

4. While it is admitted that a purchase by a husband of real estate with his own funds, placing the title in his wife's name, will raise no resulting trust in favor of him or those claiming under him other than creditors, it is submitted that the presumption of a gift to the wife by the husband at a time when he is alleged to be her debtor, is inconsistent. See Wesco's App., 52 Pa. 195, 198. It is our contention that if Mrs. Hauer is regarded as a creditor of her husband to the extent he received the rents of her property, she must assume all the consequences of that position, and that the $1,825 he paid in August, 1886, for the house to which title was taken in her name, must be credited on account of her claim. But, if her claim as a creditor is disallowed entirely, as we contend it should be, then we admit the presumption that he intended this house to be a gift to her, within the ruling of Earnest's App., 106 Pa. 310, and Jones v. Bland, 112 Pa. 176. In conclusion, if Bardsley's Est., 7 W. N. 48, is based upon authority, there can be no doubt of the correctness of our position. That case was referred to with approval by Mr. Justice GORDON, in Early v. Rolfe, 95 Pa. 61.

*Mr. George Nauman*, for the appellee:

1. If anything is decided in Pennsylvania, it is settled by a

long line of cases that where, since the act of 1848, a husband receives his wife's money, he receives it as hers; it remains hers, he must account for it, and he must prove a gift of it or repay it: Johnston v. Johnston, 31 Pa. 454; Mellinger v. Bausman, 45 Pa. 528; Grabill v. Moyer, 45 Pa. 530; Hinney v. Phillips, 50 Pa. 382; Mann's App., 50 Pa. 375; Gicker v. Martin, 50 Pa. 138; Bachman v. Killinger, 55 Pa. 418; Bergey's App., 60 Pa. 415; Crawford's App., 61 Pa. 55; Young's Est., 65 Pa. 105; May v. May, 62 Pa. 213; Ziegler's App., 84 Pa. 345; Hamill's App., 88 Pa. 363; Meckley's App., 102 Pa. 543.

2. Nor is the doctrine limited to large amounts or to principal only. In some of the cases cited, it was applied to small sums and to annual payments of dower or rents. The authorities relied on by the appellants do not bear them out. As to the authority of McGlinsey's App., 14 S. & R. 64, see Mellinger v. Bausman, 45 Pa. 529. Can it be possible, in the teeth of the decisions in this state, and in a case like this one, that the burden is on the wife to prove that she has made no gift, and that too when there is no evidence of one? As to the house purchased by the husband in the name of his wife, the evidence clearly shows that it was intended by the husband as a gift to his wife, and if he had given it to her by will, which is perhaps the most analogous case, this gift would not have prevented her recovery: Horner v. McGaughy, 62 Pa. 191; Sprenkle's App., 1 Mona. 402.

OPINION, MR. JUSTICE McCOLLUM:

The single question presented by this appeal is whether a wife, who for a period of ten years or more permits her husband to receive and use as his own the rents of her separate property, can, at his death, recover them from his estate, without proof of an understanding that he should account for them.

It is well settled that a husband, who receives any portion of the principal of his wife's separate estate, becomes, in the absence of an agreement controlling his reception of it, her debtor for the amount so received, but he is not, as a general rule, chargeable with interest upon it. It lies on him to show the agreement which relieves him from the payment of the principal, and on her to show the agreement which entitles her to interest, but the agreement, in either case, may be implied

from the circumstances attending the transaction. Prior to the act of April 11, 1848, P. L. 536, a husband was not required to account to his wife or her legal representatives for the rents of property settled to her separate use, if he received them with her knowledge and approval, and without any understanding that he should hold them in trust for her. In such case, the presumption was that the rents were used in the maintenance of the family, and that the wife intended a gift of them to the husband for that purpose.

In McGlinsey's App., 14 S. & R. 64, Chief Justice TILGHMAN said: "It is a general principle, that where the wife permits her husband to receive the profits of her separate estate, and particularly where they live together, and the expenses of housekeeping are paid by him, the presumption is that it was the intention of the wife to make a gift of the profits to the husband. And there is great reason for this presumption, because the husband, being in receipt of this money, may be induced to live at a greater expense than he would otherwise have done, whereby the comforts of his wife as well as his own are increased. To call him to account, therefore, after the lapse of a number of years, might be ruinous, and would certainly be unjust." The law on this subject was clearly stated by Mr. Justice KENNEDY, in his charge at Nisi Prius in Towers v. Hagner, 3 Wh. 48, as follows: "Now, according to the legal effect of the agreement made between Capt. Towers and his wife, . . . . Mrs. Towers continued to be the owner in equity of her estate, the same after marriage as before. Her husband had no right whatever to her money, nor to the rents or profits of her real estate; all still belonged to her, and she had an unquestionable right to dispose of them as she pleased. . . . . . If Capt. Towers received any of her rents without her consent or authority, he would be bound to account for it, and pay it to her. If, however, he received her rents by and with her consent, while they lived together in peace and harmony, and used them without any complaint or objection being made by her for years, the presumption would be that such rents, so received, were a gift from her to him ; and, if so, his estate would not be accountable. This same rule would also apply to the receipt of interest on money belonging to her, and standing out upon loan." The portion of the charge we have quoted

Opinion of the Court.

was approved by the court in banc, and the principles announced in the cases cited have not been disputed by any decision of this court before or since the act of April 11, 1848.

There is no foundation in reason for a different rule respecting rents of property settled to the separate use of the wife, and the rents of her separate property held under that act. The circumstances which create the presumption of a gift to the husband of the rents in the former case, will accomplish the same result in the latter. But a broad and plain distinction is drawn by the cases between the receipt by the husband of the income of his wife's separate property and the receipt by him of the principal or corpus of her estate. A gift of the income may be implied from his receipt of it with her consent, but a gift of the principal will not be presumed from her mere acquiescence in his receipt and use of it. This distinction will be observed in the decisions which allow her to recover the corpus, but deny her compensation for the use of it, unless there is either an express or implied undertaking by the husband to pay interest or rent. The distinction rests, in part at least, upon the fact that income is usually applied to the maintenance of the family, while the effort in every well-regulated household is to preserve the principal intact. A wife may well consent that the income of her separate estate shall enter into a common fund for family uses, and object to an appropriation of the principal of it for that purpose. The living expenses of the family are materially affected by its income, without regard to the source of it; and, if the wife permits the husband to receive and apply to these expenses the rents of her separate property, the fair inference is that she intends a gift of them to him, and she will not be allowed to reclaim them from him or his estate. It would be manifestly unjust to require him to account for them, when he had received and expended them with her knowledge and approval for their joint benefit. It was said by Lord McNaughten, in Edwards v. Cheyne, L. R. 13 App. Cas. 385, after a careful review of the English cases on this subject, that " the rule in equity is clear, from the earliest times, that where the husband and wife have lived together, the wife cannot charge her husband or her husband's estate as her debtor for arrears of her separate income which she has permitted him to receive. The object of the rule, ac-

cording to Lord HARDWICKE, was 'to prevent such accounts between husband and wife, which it is impossible to determine according to their rights after the death of the parties.' . . . . Where the circumstances are such that the wife's consent or acquiescence may fairly be presumed, the presumption arises immediately on each receipt by the husband, and bars all claim on the part of the wife or her representatives." In re Flamank, L. R. 40 Ch. Div. 461, KAY, J., said: "It has always been held that while a husband and wife are living together in perfect comity, as these were, the receipt by the husband of the separate income of the wife may be treated as a gift of that separate income to him, to be applied for the joint benefit of himself and his wife, as for the maintenance of their household and the like." An express consent or acquiescence of the wife need not be shown. It will be implied from circumstances and a course of life consistent with it, and opposed to any other conclusion.

In the case before us, the appellee received during coverture a conveyance of a hotel property in Marietta, but whether she had a separate estate from which she paid for it, or it was a gift to her from her husband, the record does not disclose, nor is it material. The husband paid the insurance and taxes and made repairs and improvements on the property, and he received and used the rents of it without objection from his wife. No account of rents and expenditures was kept by either. They dwelt together in harmony, and neither supposed that the relation of debtor and creditor existed between them respecting the income of the wife's separate estate. A short time before his death, the husband purchased, in the name and for the benefit of his wife, a house and lot for which he paid the sum of $1,825. This transaction, as explained by the husband, constituted a gift to the wife of the property so purchased, and evinced affectionate solicitude for her welfare and comfortable maintenance. It was not the act of a debtor towards his exacting creditor, and it was not consistent with that relation. It is apparent, from the evidence produced by the appellee for the purpose of showing that this transaction was a gift to her from her husband, that he did not regard himself as her debtor for the rents of her separate property which he had received and used for their mutual benefit and support; nor do

we find on this record any act or declaration of the wife manifesting disapproval of his appropriation of the rents, or indicating a purpose on her part to charge him with them. There is certainly no evidence that she entertained such a purpose while he was living. The first demand for an account came after his death, and it was then that she took the position that, as to the rents of her separate property received by him without objection from her, he was her debtor, and as to the property she received from him she was his donee. The learned auditor sustained this position, and allowed her the rents, less the expenditures it was shown the husband had made for repairs and improvements, insurance and taxes. This allowance was placed distinctly upon the ground that there was no express or direct proof that she acquiesced in the husband's receipt of them. But, as we have already seen, this is not necessary. It sufficiently appears that she knew that he rented the property, and must have known that he was paid for its use. The circumstances admit of no other conclusion. If she was not willing that he should receive the rents, she could easily have prevented it by a notice to the tenant. Her acquiescence is shown in her failure to do so, or to make any objection to the husband's action. It follows from the principles already considered that a gift of the rents to him was intended by her, and that she cannot now require his estate to account for them. If there are no other demands against the fund, it should be distributed to the widow and next of kin under the intestate laws.

> Decree reversed, and record remitted for further proceedings in accordance with this opinion; the costs of the appeal to be paid by the appellee.