## Morris's Estate.

*Husband and wife—Gift to husband—Presumption—Evidence.*
1. Where a wife knows that her husband is receiving the income from her property and acquiesces in his retention of it for a considerable period of time, the presumption of a gift to him arises, and the burden of overcoming that presumption is placed upon the wife; *a fortiori,* where she waits until after he has died and then asserts her claim.

*Courts—Orphans' Court—Practice, O. C.—Case stated.*
2. There is no such thing in the Orphans' Court as a case stated.
3. In the Orphans' Court facts should be produced in evidence before the court.

Exceptions to supplemental adjudication of Lamorelle, P. J. O. C. Phila. Co., Jan. T., 1924, No. 198.

*Edmonds, Obermayer & Rebmann,* for exceptions.

*Byron, Longbottom, Pape & O'Brien,* contra.

THOMPSON, J., Nov. 5, 1927.—The exceptions before us relate to the action of the Auditing Judge in dismissing a claim made by decedent's wife for $42,313.34, for rents alleged to have been collected by decedent as agent for his wife from March 11, 1920, to Oct. 18, 1924, the date of decedent's death, which rents claimant avers were never paid over to her.

No testimony was taken or evidence submitted at the audit other than a writing signed by the attorneys for the respective parties, entitled "Agreed statement of facts concerning claim of Hannah Morris against the estate for $42,313.34," from which writing it appears:

1. That, after repeated requests, decedent, in March, 1920, by deed conveyed twenty-eight certain pieces of improved real estate to his wife, the claimant.

2. That prior and subsequent thereto the rents from some of said real estate were collected by decedent and from others by agents, who remitted same to decedent.

3. Decedent kept so-called books of account on loose-leaf ledger sheets, on some of which the rents for the property in question were noted, and on others his personal affairs not connected with the twenty-eight properties were noted, on which respective sheets various expenses in connection with the twenty-eight properties were set forth, including taxes, real estate income, &c. The sheets for the years 1922 and 1923 had "H M" (the initials of the claimant) in the upper corner in lead-pencil in the handwriting of the decedent.

4. The accounts referred to above, including the receipts and disbursements of his remaining property, were sent by decedent to an attorney to prepare separate income tax returns.

5. Letters and statements by decedent to other persons that the properties in question belonged to claimant.

6. Decedent signed leases for some of the properties as agent, but as to the other properties, it is not stated who signed the leases.

7. The rents from the properties in controversy were deposited by decedent in his personal bank account, from which moneys were checked out for the expenses of the properties in question as well as for his personal expenditures.

8. Decedent made numerous purchases of bonds and stocks out of his personal bank account, into which the rents of the properties in question were deposited as above stated.

9. Decedent and claimant lived together in the City of Philadelphia in a six-room apartment, and his income was on an estate of approximately $500,000.

In our opinion, the agreed statement of facts fails to show:

1. The circumstances under which the real estate in question was conveyed, the consideration, if any, and whether claimant ever paid anything for the same; also, whether the beneficial ownership was not retained by the decedent as throwing some light on the matter under discussion.

2. Any admissions by decedent to the claimant that the properties in question were hers and that she was entitled to the rents.

3. It appears from the records of this court that the decedent's will was contested, which resulted in a compromise and adjustment of the interests of the respective parties, whereby the widow received approximately 78 per cent. and the next of kin 22 per cent. of the net estate of the decedent. Was the claim under discussion considered in effecting the settlement of the will contest? The evidence taken in the will contest was not introduced at the audit, and we come to no conclusions from reading the same from the stenographic notes thereof, other than such reading suggests facts which are valuable and throws much light upon the merits of the claim under discussion, such as, from said testimony it appears that from at least 1912 to 1920, the date of the deed to claimant, claimant made repeated requests of the decedent that he transfer certain properties to her so that in the event of claimant dying before decedent she could leave said properties to her relatives or friends. This has a direct bearing upon the meaning and effect of the transfer of the properties to claimant, as it clearly indicates that the beneficial ownership of the properties conveyed was not to pass with the title to the claimant. She wanted the title in her name only for the purpose of enabling her to dispose of the same by will if she predeceased the decedent, which event did not happen. This appears from the testimony of the claimant in the will contest and is her own story as to how she acquired title. From her own statement, corroborated by the subsequent acts of the parties, it was not the intention of either decedent or claimant that the rents or other beneficial ownership in what the property produced should pass to claimant at the time the title

passed. The testimony in the will contest also shows that many of the properties conveyed to claimant were sold in the lifetime of the decedent, the claimant joining in the deed, and we have no information as to who received the proceeds thereof.

4. While decedent's check-books show no checks to the order of claimant, the agreed state of facts is silent as to whether decedent conveyed other property to claimant or ever gave her stocks, bonds or cash either as a gift or in recognition and payment of what decedent owed claimant, if anything.

5. We are given no reason why the present claim, beginning four years prior to decedent's death, was not made in the lifetime of the decedent when we could have the benefit of what the decedent then said on the subject.

6. The family or other dependents of decedent or his wife.

From the above, it will appear that we have very few essential facts upon which to base an intelligent consideration and conclusion as to the merits of the claim in question. The claim is submitted on presumptions said to be deducible from the agreed state of facts, but, as will be seen hereafter, facts are available which might change the presumptions claimed.

There is no such thing in the Orphans' Court as a case stated: Yost's Estate, 20 Dist. R. 1012, and cases there cited. If the witnesses were produced before us, we would have the benefit of what they look like, their position to know the facts they testify to, their powers of observation, general intelligence, bias, &c. We do not know even the name of the decedent. The testimony in the will contest states that he was born in Poland and his name is Wolf Dobrzynski, and that he was naturalized in this country under the name of William Morris. Whether his name was ever legally changed to Morris or not, we are not informed. We certainly ought to know the name of the man whose estate we are settling, but apparently we do not. We do not intend to instruct attorneys as to how they should present their cases, but remind them that if they see fit to submit only a partial statement of the facts and ask us to guess what the remaining facts are, they should not complain if we refuse to so guess and leave the parties in the position where they have voluntarily placed themselves. It is not the province of the court to guess at the facts of a case; they should be produced in evidence before us. Upon the meagre facts presented, the Auditing Judge disallowed the claim upon the authority of Hauer's Estate, 140 Pa. 420, commenting upon said case as follows: "The Auditing Judge is of opinion that the broad principle underlying the decision in Hauer's Estate, *supra*, is that where the wife knows that her husband is receiving the income from her property and acquiesces in his retention of it for a considerable period of time, the presumption of a gift to him arises and the burden of overcoming that presumption is placed upon the wife; *a fortiori*, where she waits until after he has died and then asserts her claim."

We agree with the Auditing Judge in holding that Hauer's Estate is controlling in the matter before us. It will be noted that the contest here is between the wife and her deceased husband's estate, and not between creditors of the wife and the husband's estate: Mahon's Estate, 202 Pa. 201.

In Gilbraith's Estate, 270 Pa. 288, the Supreme Court said: "We said in Carpenter v. Hays, 153 Pa. 432, 434, and have since frequently repeated, 'without variableness or shadow of turning' therefrom, that 'claims against a dead man's estate which might have been made against himself, while living, are always subjects of just suspicion, and our books, from Graham v. Graham, 34 Pa. 475, to Miller's Estate, 136 Pa. 239, 249, are full of expressions by this court of the necessity of strict requirement of proof and the firm control of

juries in such cases.' And again (page 435): 'The presumption grows stronger as each period of payment goes by. In the nature of things, it is less potent against a claim for two or three months' wages than for two or three years. . . . As said by our late Brother Clark, in Gregory *v.* Com., 121 Pa. 611, 'the presumption will gather strength with each succeeding year, and the evidence to overthrow it must, of course, be correspondingly increased.' ' Experience has demonstrated not only the wisdom of these rules, but the necessity for even more strictly adhering to them, and we propose to use the light thus cast upon our pathway."

And in Hirst's Estate, 274 Pa. 286, the Supreme Court said: "A claim against the estate of a decedent must be as definite and precise as is required to recover a debt in an action at law. While formal pleadings are dispensed with, the claimant should produce evidence showing the nature and character of the debt, its origin, the terms of the contract and the exact amount claimed to be due. In an action at law, he is required to show the net balance, and in the claim presented against this estate, the amount due does not appear with the exactness required in proving claims of this character."

All exceptions are dismissed and the supplemental adjudication confirmed absolutely.

HENDERSON, J., absent.