## Kittel's Estate.   McDonald's Appeal.

*Husband and wife—Trustees—Payment.*

A trustee appointed by the orphans' court to sell land, an interest in which was devised to the trustee's wife, is bound to pay over to his wife the share of the proceeds, and a mere delay by the wife in enforcing her legal demand, will not release from liability either the trustee or his sureties.

In such a case a promise by the husband to convey to his wife some of his own real estate in payment of her legacy, does not discharge his sureties, if the promise is not kept, although the wife was willing to accept the conveyance as payment.

*Interest on legacy in husband's hands.*

In equity a wife may not charge her husband as a debtor for arrears of income of her separate estate, in the absence of an agreement, express or implied, on his part to pay interest. The presumption in such a case is that interest off the wife's separate estate, which has been received by the husband, has been expended by him, with her consent, for the support of herself and family.

Argued May 29, 1893.   Appeal, No. 13, May T., 1892, by Loretta J. McDonald, legatee, from decree of O. C. Fulton Co., sustaining exceptions to report of auditor on exceptions to and distribution of administrator's account in estate of John Kittel, deceased.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of auditor on exceptions to and distribution of administrator's account.

The facts appear by the opinion of the Supreme Court.

The opinion of the court below was as follows, by Mc-CLEAN, P. J.:

" Three of the daughters (Mrs. Ettie J. McDonald being one of them) of John Kittel, the testator, presented their petition to this court on the 4th day of October, A. D. 1875, praying for an order of sale of their father's real estate for the payment of legacies. The sale was the same day awarded, the order being directed to Robert A. McDonald, administrator c. t. a.; bond in $18,000 was filed the same day and approved, reciting the decree of sale of the real estate of John Kittel.

" [On the 11th of January, 1876, a return of sale was made

and confirmed.   Soon after, in the month of May of the same
year, we find what appears to be a distribution of the proceeds
of this sale, and full and final releases executed and delivered
by the four legatees, in full satisfaction of their legacies, the
effect of these releases being to dispense with any settlement of
an account by the administrator c. t. a.   Mrs. McDonald, the
wife of the releasee, does not join in the releases.   The pre-
sumption that she acquiesced and participated in the distribution
with other legatees, would not from all the evidence before us,
be a strained one.] [1]

" Why then do we find her husband, more than eleven years
afterward, coming into the register's office, apparently unbidden,
and voluntarily filing an account charging himself with the
proceeds of this sale, so long ago made and confirmed, and he
absolutely released by all, except not formally by his own wife.

" [And he is not content with filing a debtor and creditor
account, but he, or some one for or with him, desires to consti-
tute evidence that, although the balance shown on the account
is not in his hands, there is left the amount of the bequest to
his wife, Ettie J. McDonald.   What occasion was there then for
the settlement of this account?   Was there any necessity for
it?   Certainly none as between the husband and wife.   The
manifest, indisputable motive for it is to show waste and to
make evidence, not against the accountant, but against inno-
cent and confiding strangers, his bondsmen.   No such effort
on the part of a trustee should be successful; and we find the
surviving bondsmen properly and promptly filing objections to
this effort, first, because of the attempted annex of a distribu-
tion account; and because the accountant did account to his
wife for all money coming to her; then because of alleged col-
lusion between the accountant and his wife to cheat and defraud
the bondsmen, and that the filing of the account was only a
step to that end, and because the claim set out in it is unjust to
the bondsmen.] [2]

" The findings of the auditor are not satisfactory either to
Mrs. McDonald or the sureties.

" It is manifest from the previous references in this opinion
to the proceedings in court, the language of the bond and of
the releases, that there is error in the auditor's finding : that
what was sold was ' not the real estate of John Kittel, but real
estate of Catharine Mosser and Geo. Kittel,' etc.

" The account, which is the subject of controversy, is the account of a trustee appointed to sell the real estate of John Kittel, deceased. The fund in controversy is the proceeds of the sale of the real estate of John Kittel, deceased.

" [Upon a careful examination of the testimony, we are of the opinion that the exceptions filed by the surviving bondsmen to the auditor's report are well taken, especially the fifth and sixth. The testimony of A. J. Fore, Esq., Mrs. George Kittel and others is very convincing against the present claim of the wife.] [3]

" [Suit has already been brought on the bond against the estate of the deceased surety, and there should be no confirmation of the account as would be either conclusive of the question in controversy against, or prejudicial to the rights of the living sureties, or of the estate of the dead one.] [4]   [We therefore refuse confirmation of the auditor's report, and the same is set aside.   Decree made according to the foregoing opinion] " [5]

The testimony referred to above was of declarations that the wife claimed the house as her own, and that her money bought it.

*Errors assigned* were, (1–5) portions of opinion in brackets, quoting them respectively.

*Francis Jordan, Geo. A. Smith* and *W. Scott Alexander* with him, for appellant, cited : Johnston v. Johnston's Adm'r, 31 Pa. 450 ; Hamill's Ap., 88 Pa. 363 ; Schroyer's Ap., 140 Pa. 420 ; Wormley's Est., 137 Pa. 101 ; Black v. Whitall, 1 Stockton (9 N. J. Eq.) 572 ; Penn Bank's Est., 152 Pa. 65 ; Drinkhouse's Est., 151 Pa. 294 ; Pepper's Est., 1 Dist. R. 148 ; McCulloch v. Dobson, 30 N. E. R. 641 ; Towers v. Hagner, 3 Whart. 48 ; Hauer's Est., 140 Pa. 420 ; May v. May, 62 Pa. 206, approved in Endlich & Richards, on Married Women ; Abell v. Chaffee, 154 Pa. 254 ; Adams v. Grey, 154 Pa. 258.

*W. Rush Gillan, J. Nelson Sipes* and *W. U. Brewer* with him, for appellees, cited : Ritter v. Ritter, 31 Pa. 398 ; Small v. Small, 129 Pa. 366 ; Gleghorne v. Gleghorne, 118 Pa. 363 ; Powell v. Hankey, 2 P. Wms. 82 ; Mellinger v. Bausman, 45

Pa. 522; Hamill's Ap., 88 Pa. 363; Wormley's Est., 137 Pa. 101.

OPINION BY MR. JUSTICE DEAN, July 19, 1893:

John Kittel died July 11, 1871. At his death he was the owner of personalty to the value of about $5,000, and of a valuable farm. He left five children; to two of these, Catharine and George, he devised the farm, subject to the payment of a legacy of $3,000 to each of his three daughters, Mary, Emma, and Loretta. R. A. McDonald, the husband of Loretta, took out letters c. t. a. on his estate, and settled his account on July 4, 1873, which was confirmed absolutely. On October 4, 1875, all the heirs and legatees joined in a petition to the orphans' court for an order of sale of the land for payment of the legacies, averring an inability on part of the two devisees, Catharine and George, to hold the land and make the payments charged upon it. Thereupon the court directed an order to Robert A. McDonald, administrator, to make sale as prayed for in the petition. At the same time his bond, with Daniel Logan, George I. Pittman and James Cooper as sureties, was approved and filed. McDonald sold the farm to B. M. Lodge for $11,600, and on return being made the court approved the sale. Of the purchase money, $600 remained a lien upon the land during the minority of two grandchildren, legatees under the will; the balance, $11,000, was paid to McDonald who, after deducting proper expenses, paid to all of the legatees except his wife, their respective shares, and took from them receipts and releases. The share of his wife on April 1, 1876, after he had received the whole of the purchase money payable to him from Lodge, was $2,987.78. Nothing further was done by him until December 10, 1887, when he filed his account as trustee. In this he charged himself with the net proceeds of sale, $10,656.78, with interest from April 1, 1876, and noted in the account his payments to all the other legatees, and ended with this statement:

" Leaving in the hands of the trustee of the amount of the bequest to Ettie J. McDonald under the last will and testament of John Kittel, deceased, the sum of $2,987.78, interest from April 1, 1876."

To this account exceptions were filed by Logan and Pittman,

two of the surviving sureties on the bond, in which they were afterwards joined by Catharine Mosser, one of the legatees under the will. The exceptions in substance alleged : (1) The distribution account was improperly blended with the trust account. (2) The share of Ettie, wife of the trustee, had been paid her by the husband. (3) The account was collusively filed for the purpose of defrauding the sureties on the bond, the husband having become insolvent. (4) The accountant is not chargeable with interest on the legacy payable to his wife. The court appointed F. M. Johnston, Esq., auditor, to take testimony, find facts, and report distribution.

The auditor, after full hearing, found the material facts against the exceptants, and that there was a balance in the hands of the trustee due and unpaid to Loretta J. McDonald, his wife, of $2,987.78, with interest from April 1, 1876, to January 11, 1888, making a sum total of $5,099.12. To this report the sureties filed exceptions, in substance alleging error in not finding as a fact that the wife had been paid her legacy, and that the account was a collusive arrangement between her and her husband to defraud his sureties, and the allowance of interest on the principal of the legacy.

After hearing on the exceptions, the court, being of opinion the legacy had in effect been paid, sustained them and set aside the report. Then Loretta J. McDonald took this appeal, assigning for error the decree setting aside the report of the auditor.

The sole question for our consideration is, what is the fact ? Does the evidence warrant the finding of the auditor that Mrs. McDonald was not paid her legacy, or the conclusion of the court that she was paid ?

Facts found by an auditor, from the contradictory oral testimony of witnesses personally before him, are to be taken as the facts, unless the findings are manifestly erroneous. And if his findings be concurred in by the court below, their correctness will be all the more probable. This rule, so often repeated, has application only to those facts depending on the candor, intelligence, and memory of witnesses. Where the truth is determined by inference or probabilities from established or undisputed facts, we can review and determine the reasonableness or unreasonableness of such inferences as well as the auditor or

the court below. But where the finding of fact by the auditor is set aside by the court, then there is imposed on us the duty of scrutinizing the testimony, and determining what the fact is from the evidence submitted. That is the case before us.

The court below has sustained these exceptions to the report of the auditor as follows :

"4th. The auditor erred in not finding as a fact an understanding between the husband and wife by which he was to use and retain her said legacy.

"5th. The auditor erred in not finding that lapse of time and other evidence precluded recovery by the wife to the prejudice of his bondsmen."

There are other exceptions, but so far as they affect the real contention, they are embraced in these two.

In determining the bearing and significance of the evidence, let us first group the facts not in dispute. The appellant, Loretta J. McDonald, is the wife of Robert A. McDonald ; by her father's will, she, on April 1, 1876, was entitled to a legacy of $2,987.78, out of a fund of $10,656.78 in the hands of an officer of the orphans' court. She had a right to demand payment from him ; the other legatees entitled to share in the fund were paid ; her money was not in fact paid her then or afterwards in the sense of a handing of it over by the trustee and a receiving of it by her as legatee. From that time up to the filing of his accounts in 1887, a period of eleven years, she did not attempt to enforce payment by legal proceedings. The trustee was her husband ; he was a prominent and apparently prosperous man at the time he was appointed trustee, and for some years afterwards was possessed of considerable property ; then became intemperate, and bankruptcy soon followed. The payment of this money now by him individually is altogether hopeless.

These undisputed facts warrant no inference of any understanding or agreement between him and his wife that he owed her no duty as trustee ; certainly the mere fact of the marital relation worked no change in the legal relation. He had received her money, not as her agent, but as the court's ; so far as appears, her consent was not asked ; it was his duty in the performance of the trust to pay his wife her money just the same as he paid the other legatees theirs ; that he was married

to the legatee gave him no right to withhold it. The mistake made in the argument of the appellees and by the court below is, in not distinguishing between the husband and the trustee; the rights of a wife where her husband has received her money, and the right of a legatee where a trustee of the orphans' court has received and ought to pay over her legacy.

Suppose the trustee had not paid over to Mary Nickerson, his sister-in-law, her legacy for eleven years, the neglect to enforce payment by legal proceedings would have warranted no inference of an understanding or agreement between them that he was relieved from his official obligation to pay and that she had accepted him individually as her debtor. There is not the semblance of reason for holding that such indulgence is any more prejudicial to the claim of a wife who happens to be a legatee.

It has never been held that mere delay in enforcing a legal demand against a negligent, unfaithful trustee, released him from his official duty or liability. The most natural explanation of delay here is afforded by the fact of the domestic relation between the trustee and legatee. A husband inclined to wrong his wife, and who at the same time as trustee owes her money, is in a most favorable situation for indulging his inclinations; as trustee he can hold back his legatee's money; as husband he can mar domestic peace if the wife objects; such a legatee is not likely to go to law with the trustee, or even to make threatening demands to enforce her rights.

If, then, no inference unfavorable to the wife's claim can reasonably be drawn from the mere fact of her delay in asserting it in the orphans' court, is there testimony which, taken in connection with this fact, fairly warrants the conclusion she consented to the individual appropriation by her husband of the money he owed to her as trustee?

The fact sought to be established by the exceptants is, that by her consent her husband put the money of the wife in a property in McConnellsburg, which they occupied as a home. This was conveyed to the husband April 14, 1873, at the price of $3,500, and the purchase money was all paid in less than a year thereafter, two years before McDonald received any of the money now in dispute. He had received, before this, her share of the personal estate, amounting to $859, and may have appro-

priated this in part payment; but whatever bearing that might have in explanation of her declarations, it is irrelevant for any other purpose, as the sole contention here is the legacy charged upon the land.   On the undisputed facts, the auditor was bound to find as he did, that no matter what declarations the wife may have made as to her money being in the property, no part of this legacy was paid by her husband for the purchase of it.

The appellees, however, in view of the correctness of this finding, adopt this theory from the evidence : " That, although not a dollar of the wife's money was paid for the property, yet he promised to convey it to her, and her declarations show that she was willing to accept it; and by so doing, thus permitting him to retain her money, he was discharged as trustee, and became her personal debtor."

We have no doubt, from a careful scrutiny of the evidence and the conduct of the parties, he repeatedly promised to convey her this property in satisfaction of her legacy ; and we have just as little doubt that she expected him to do so.   All the evidence is clearly reconcilable on this theory, and some of it is inconsistent with any other.   But what significance is this fact entitled to?   It was no more than a promise to pay the legatee with a house and lot instead of money.   The promise was not kept; it was broken.   Violated promises cannot discharge a trustee from an official obligation.   If he had repeatedly promised to pay her in money, and had repeatedly broken his promise, it would scarcely be argued that her forbearance during the time he was placating her with promises, was such an agreement on her part as turned the trustee into a common debtor, whom she must now sue in another court.   The promise to pay in land which he never conveyed, even though she were willing to accept it, did not discharge him from his official accountability.   Nor did she do anything of which the sureties have any right to complain.   She did not bring suit against her husband, yet the testimony of exceptants shows that otherwise she did about all a wife could do to get her legacy.   She importuned him ; this not seldom resulted in quarrels, with bitter reproaches on her part and such unmanly retorts on his, as, if made to other than his wife, would have immediately resulted in a prompt legal accounting.

The sureties knew her relation to their principal when they

assumed their obligation; this obligation was, that he would pay over the money received by him from the sale of the land to the legatees of John Kittel. It was their duty, as well as interest, to see that he faithfully executed the trust. There is no evidence they gave the matter any attention until the husband's ability to pay became doubtful, then one of them, Mr. Pittman, testifies he several times urged the husband, it will be noted, not to pay his wife, but to get a formal release from her. He says the husband made light of it, and said, "That will be all right." If the party wronged had so acted and spoken, instead of the wrongdoer, the surety might with some show of reason urge that he had been lured into inaction; as it stands, his own testimony shows, that, as early as 1883, four years before the final accounting, he was conscious of his peril, and urged the defaulting principal to obtain a legal acquittance from the wife, not because she had been paid, but to save the surety from being called on for payment.

However much we may regret that honest persons must suffer by the default of dishonest officials, we can find nothing in all this evidence which tends to relieve these sureties from their legal obligation. These bondsmen were not in any true sense of the words, "innocent and confiding strangers," as termed by the learned judge of the court below. They are men who nominally appeared in the orphans' court with McDonald, and in substance said, "We know this man, trust him; he is honest, capable, and faithful; will pay over to those entitled to it the money that comes into his hands; if he do not do so, we will." The court took them at their word, and put into his custody a dead man's estate to be paid over to his legatees. This wife did not undertake to make good his default; these sureties did, and it is but simple justice to hold them to their bargain.

In computing and allowing interest, we think the facts do not warrant the conclusion of the auditor.

From the earliest times, both in this state and England, before the enactment of any statute for the protection of the estates of married women, the rule in equity has been, that the wife shall not charge her husband as debtor for arrears of income of her separate estate, in the absence of an agreement, express or implied, on his part to pay. The reason for the rule, is

to relieve from the necessity for accounts, which in the ordinary conduct of domestic affairs would be so difficult of determination. Hence, in settlements between husband and wife, in the absence of proof to the contrary, equity presumes that interest money on the wife's separate estate, which has been received by the husband, has been expended by him with her consent, for the support of herself and family. The rule is directly the reverse of this as to the principal. Neither the statute of 1848 nor that of 1887 has worked any change in this particular. As the reason grows out of the duties incident to the domestic relation, so long as these remain unchanged, unless there be express statutory enactment, the presumption will continue: Mellinger v. Bausman, 45 Pa. 522; Hamill's Estate, 88 Pa. 363. Also the very full opinion by our brother McCollum in Hauer's Estate, 140 Pa. 420.

Here, there is no evidence of a promise by the husband to account to his wife for the interest. The evidence shows he received it from the devisees of the land, without objection by her, before he was appointed trustee; the presumption is, he continued to receive it from himself as trustee, afterwards. He expended it, for the evidence shows he provided a liberal support for his wife and family. She, in all her complaints and indignant statements of her wrongs, never claimed any interest. She expected, and he doubtless promised her, the house, but she expected no more, as her due. At most, the value of this was but little more than the legacy, and did not equal the share of personalty and the legacy together. The whole evidence shows that the interest was consumed in the support of herself and the family, with no intention on her part to make her husband a debtor for the amount of it.

Therefore, the decree of the orphans' court is reversed and set aside; the report of the auditor, finding due and payable by Robert A. McDonald, trustees, to Loretta J. McDonald, legatee under the will of John Kittel, deceased, $2,987.78, principal, is confirmed absolutely.

The allowance of interest on said principal from April 1, 1876, by the auditor is stricken off, and his report in that particular is set aside. The record, with the decree thus reformed, is directed to be remitted to the orphans' court to be proceeded with according to law.