## Morrish *v.* Morrish, Appellant.

*Equity—Equity practice—Two-witness rule—Application—Married women—Husband and wife—Suit by wife for her separate property—Deed to husband shortly before marriage—Fraud—Accounting—Evidence—Sufficiency—Laches — Estoppel — Presumption—Limitation—Coal royalties—Interest—Acts of April 22, 1856, P. L. 532-3, Sec. 6, and March 27, 1913, P. L. 14.*

1. The two-witness rule does not require that every detail of one witness's testimony must be corroborated by the direct evidence of another, but only that a litigant's material, or controlling, allegations must be sustained by either one other witness or equivalent corroborating circumstances.

2. Where at a hearing of a suit in equity for the cancellation of a deed and for an accounting, no point was raised, at the conclusion of the plaintiff's case, that her case had not been sufficiently proved

.as required by the two-witness rule and thereafter the defendant appeared as a witness for himself, and admitted that the deed, sought to be cancelled, had, in fact, the effect contended for by plaintiff, the two-witness rule no longer had any application.

3. In a suit by a married woman to compel her husband to reconvey to her certain property which she had conveyed to him just prior to her marriage, where it appeared that such conveyance was absolute in form, and where there was evidence that it was induced by false representations on the part of the husband as to the effect of the conveyance and that he had stated to her that it merely gave him control of the property so that he might manage it for her benefit; and where defendant admitted on the stand that it was not intended that he should have absolute control of the property, although, in his answer, he claimed absolute ownership thereof, the court properly entered a decree in favor of plaintiff.

4. In such case the wife is a competent witness, the Act of March 27, 1913, P. L. 14, using the words "separate property" in a broad and comprehensive sense, not applicable to this case.

5. The fact that in such case, no relief was sought until more than thirty years after the conveyance was made, did not preclude plaintiff from successfully urging her claim for reconveyance, where it appeared that there was a continual recognition by defendant of his wife's equitable estate and although there was duplicity on the part of the defendant in procuring the conveyance, the consummation of his attempted fraud did not occur until in the suit brought by the wife, when he formally set up his claim to absolute ownership; and the court properly found that plaintiff's laches was not a bar to the maintenance of the suit.

6. In a suit between a wife and her husband for the protection of the former's property, statutes of limitation as well as presumptions or estoppel by lapse of time do not ordinarily affect the rights of the wife, since for reasons of public policy she cannot be expected to treat her husband as a stranger; hence the Act of April 22, 1856, P. L. 532-3, Sec. 6, does not apply to this case.

7. Where in such case a complaint was made of a surcharge of income against the defendant, and it appeared that he had been surcharged with coal royalties received by him from plaintiff's lands, and where there was a finding, on sufficient evidence, that the royalties were to be collected and put at interest by defendant for the benefit of his wife and children, and that they were accumulated and invested by him, it was not material whether or not the property from which the royalties arose was an open mine at the time of the original conveyance, and assignments of error complaining of such surcharge were dismissed.

8. Where in such case the wife contended that the defendant should be required to pay interest on the coal royalties received by him, as well as interest on certain moneys derived from sales of real estate, but where it appeared that the income so received was spent by defendant for family maintenance, with full knowledge on the part of plaintiff and without protest during many years, the rule that ordinarily a husband will not be required to pay interest to his wife was applicable, and an assignment of error complaining of the refusal of the court to make the surcharge requested was overruled.

Argued May 28, 1918. Appeals, Nos. 275 and 65, Jan. T., 1917, 1918, by plaintiff and defendant, from decrees of C. P. Luzerne Co., March T., 1916, No. 8, on bill in equity for the cancellation of a deed, in case of Olive Morrish v. Albert Morrish. Before BROWN, C. J., MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for cancellation of a deed, for an injunction and for an accounting. Before STRAUSS, J.

The opinion of the Supreme Court states the facts.

The court on final hearing granted the relief prayed for. Plaintiff and defendant both appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*Granville J. Clark*, for defendant.—Plaintiff was not a competent witness as against her husband.

Plaintiff failed to establish her case by the evidence of two witnesses, or by one witness and corroborating circumstances, and, therefore, the bill should be dismissed: Summers v. Shryock, 46 Pa. Superior Ct. 231; Luther v. Luther, 216 Pa. 1; Caveny v. Curtis, 257 Pa. 575; Price's App., 54 Pa. 472, 482.

Section 6, of the Act of April 22, 1856, P. L. 532, is a bar to the action: Miller v. Baker, 166 Pa. 414; Reagle v. Reagle, 179 Pa. 89; Wrafield v. Fox, 53 Pa. 382; Way v. Hooton, 156 Pa. 8; Christy v. Sill, 95 Pa. 380; Silliman v. Haas, 151 Pa. 52; Hunt v. Wall, 75 Pa. 413, 417;

Boyd v. Webber, 193 Pa. 651; Updegrove v. Blum, 117 Pa. 259; Inlow v. Christy, 187 Pa. 186; Watson v. Watson, 198 Pa. 234; Barry v. Hill, 166 Pa. 344; Metz v. Hipps, 96 Pa. 15; Williams v. Ivory, 173 Pa. 536; Hiester v. Shæffer, 45 Pa. 537.

It was error to hold defendant liable for the coal royalties which he had received from plaintiff's lands.

*John T. Lenahan,* with him *Edward A. Lynch* and *C. B. Lenahan,* for plaintiff.—The wife was a competent witness against her husband.

The burden was upon the defendant to show the bona fides of the transaction, and the two-witness rule does not apply: Kline v. Kline, 57 Pa. 120, 122; Stepp v. Frampton, 179 Pa. 284; Darlington's App., 86 Pa. 512, 518; Miskey's App., 107 Pa. 611; Shea's App., 121 Pa. 302; Italo-French Produce Co. v. Thomas, 28 Pa. Superior Ct. 293; Hechelman v. Gever, 248 Pa. 430, 433.

Neither the Act of 1856 nor the rule of laches is a bar to the plaintiff's recovery: Miller v. Baker, 160 Pa. 172, 177; Orr v. Orr, 22 Pa. D. R. 887; Reagle v. Reagle, 179 Pa. 89; Core's App., 26 A. R. 478; Bowie v. Stonestreet et al., 6 Md. 418; Second National Bank of Beloit v. Merrill & Houston Iron Works, 50 N. W. 505, 507; Comstock's App., 10 Atl. 559; Lombard v. Morse, 29 N. E. 205; Hall v. Otterson et al., 28 Atl. 907; Fairlamb v. Hempshire, 7 W. N. C. 92; Christy v. Sill, 95 Pa. 380; Smith on the Law of Fraud, pp. 269-270; Yeoman v. Petty, 40 N. J. Eq. 495, 498; Smith v. Blachley, 198 Pa. 173, 178; Davis v. Monroe, 187 Pa. 212; Hinze v. Hinze, 90 Pac. R. 762, 12 L. R. A. (N. S.) 493.

OPINION BY MR. JUSTICE MOSCHZISKER, July 17, 1918:

Plaintiff filed a bill in equity, February 10, 1916, praying cancellation of a deed, dated November 27, 1880, conveying certain property to defendant, an injunction against alienation or encumbrances, an accounting of income, and general relief. After hearing on bill and

answer, a decree was entered, which, in its main features, favors plaintiff; both sides have appealed.

For purposes of the present review, the essential averments of the bill may be stated as follows: Plaintiff and defendant were married November 27, 1880, and lived together as man and wife continuously to the time of trial, having had two children born to them; on the day of the marriage, and just prior to that event, defendant told plaintiff "he had a paper for her to sign," and thereupon took her to the office of a justice of the peace, where she executed and acknowledged the document here in controversy; "according to representations then made by said defendant," plaintiff was told "the only effect of [her] signature......on said paper would be to give defendant permission to transact business in her name," and "by reason of the confidence [plaintiff] had in said defendant, because of...... .their approaching marriage, she was induced to sign the said paper, believing...... it simply gave said defendant power to transact whatever business was demanded in connection with her estate"; in "the year 1910" plaintiff "learned for the first time that the paper signed by her was not as represented ......, but was a deed conveying all her estate, real and personal, to said defendant" (a copy of this instrument, naming $5,000 as the moving consideration, being attached to the bill); thereupon plaintiff "made demand on defendant to convey the said estate, together with the accrued income thereof, back to her......, but said defendant refused and still refuses so to do"; finally, "said deed was obtained......by false and fraudulent misrepresentations made by defendant, and was without consideration."

The answer admits execution of the deed just prior to the marriage, and the "trust and confidence" then existing between plaintiff and defendant as man and woman about to marry, but denies that the latter misrepresented the character and effect of the document, or that he at any time represented it as "anything other than it

appears to be, viz., a deed absolute"; defendant avers the deed was "prepared at the suggestion and request of plaintiff, and was executed by her voluntarily and with full knowledge of its contents and effect," adding, "she has known the same from that time to the present, and phases and incidents of my ownership have frequently been under consideration between us......and at no time since the execution and delivery of said deed until very recently.......has my wife.......ever suggested that the said deed was not absolute"; finally, he denies that demand was made upon him for a reconveyance, prior to the service of the bill, and asserts this latter demand was not the free act of his wife, but was inspired by their sons, one of whom was thirty-two and the other thirty-four years of age.  In short, defendant, in his answer, claims full ownership of all the property in question, by gift from his wife, under what he terms a deed absolute, executed immediately prior to their marriage.

In all material particulars, the findings of the court below accord with the allegations of the bill.

The decree appealed from orders defendant to reconvey to his wife, "free of all encumbrances, in fee simple, all of the land and property described in said deed, subject, however, to such conveyances as......[had been] made to third persons," and, reciting that defendant "has by an accounting......been found to have in his hands $32,275.89......, property of plaintiff, which he, the defendant, holds for her as trustee ex maleficio," directs him "to pay over the said amount to her," judgment for the sum named being thereby ordered against defendant; this is accompanied by an injunction, to insure a proper reconveyance.

We shall discuss and determine the several questions presented according to the order in which they are stated in defendant's paper book.

It is contended that plaintiff is incompetent as a witness in her own behalf, because the deed in controversy was executed prior to her marriage, and, therefore, at

the time the bill was filed, the real estate involved was not her "separate property," within the meaning of that term as used in the Act of March 27, 1913, P. L. 14. As to this, without regard to the question of the legal effect of the deed, it is sufficient to say that, when the purpose of the act relied upon is considered, it is apparent the term "separate property," is not used therein in any technical, but in a broad and comprehensive, sense. We conclude that, in this action against her husband, the wife is fully competent as a witness "to protect or recover" what she alleges to be her separate, or individual, property.

Appellant further contends that, since this was a proceeding in equity to set aside a conveyance, absolute in form, it could be done only by the testimony of two witnesses, or one with corroborating circumstances; and that this rule had not been met in the present instance. The learned court below found the testimony of the wife had been sufficiently corroborated by certain of her own witnesses to meet the requirements of the rule in question; but, under the circumstances of this case, it is not necessary to go into a discussion of the merits of that conclusion, for, notwithstanding defendant's claim that the deed under attack conveyed to him an absolute title, and was intended so to do, when Mr. Morrish appeared as a witness in his own behalf, he admitted not only that no consideration had passed from him, but that the deed, although absolute in form, was made upon the understanding that he was to take over and handle the property thereby conveyed in order to protect his wife's interests and facilitate a settlement of the estate of her father, from whom the property had been inherited, and to invest the coal royalties and other income therefrom—such "property to be kept for our children, if we had any in the future, and that the coal royalty I should invest where it wouldn't be squandered or spent." He further testified the understanding between him and plaintiff, at the execution of the deed, was that the property, and

royalties therefrom, should be kept safely invested by him, for his wife and possible children, so that, if his wife "needed it in the future she could use it." On this state of the record, it is clear the two-witness rule has no controlling force.

The averments of both bill and answer are somewhat loosely drawn, and must be judged accordingly; but it is plain the material allegations of the former are (1), that the paper under attack was never intended to take effect as a deed absolute, and (2) that defendant purposely deceived plaintiff as to the form and character of this document, when he induced her to sign it. The answer denies both allegations; but, as just shown, defendant, at trial, practically admitted the first and most material of them, although not the second. Under these circumstances, it requires no citation of authority to show that defendant cannot in good faith assert against his wife that the property in controversy now belongs to him; nor can his counsel successfully argue that plaintiff's case must fall because she was the sole witness on her side who gave direct testimony as to what occurred at the time the deed was made.

The two-witness rule does not require that every detail of one witness's testimony must be verified by the direct evidence of another, but only that a litigant's material, or controlling, allegations must be sustained by either one other witness or equivalent corroborating circumstances (Miller v. Pearce, 6 W. & S. 97, 99, 100; Lingenfelter v. Ritchey, 58 Pa. 485, 486 et seq.; Thomas v. Herring, 244 Pa. 550, 556; 10 R. C. L. 546); and these requirements were sufficiently met in the present instance. No point as to the rule in question was raised at the close of plaintiff's case, and, when defendant by his own testimony destroyed the absolute character of the deed in controversy, such rule had no further application; for it would be absurd to hold that, when a defendant in equity appears as a witness for himself and in effect admits the deed under which he claims was not intended to

be an absolute conveyance, its form as such can be overthrown only by the testimony of two witnesses, produced by his opponent, as to what actually had happened at the execution of the instrument, yet such is the essence of defendant's contention on this branch of the case. No matter what rule of evidence originally applied, after defendant's testimony the deed could no longer stand between the parties thereto as an absolute conveyance, for he, himself, had overthrown it.

In addition to urging that the two-witness rule has been complied with, plaintiff (citing Kline v. Kline, 57 Pa. 120, 122; Stepp v. Frampton, 179 Pa. 284, 289; Darlington's App., 86 Pa. 512, 518; Miskey's App., 107 Pa. 611, 630, and Shea's App., 121 Pa. 302, 319) contends with some force that its obligations do not apply to her case, since defendant, in his answer, claimed under what he alleged to be a voluntary donation to him of the entire estate of his betrothed wife, made by her immediately before their marriage; she argues that, under these circumstances, the burden was upon him to show not only the bona fides of the transaction but that she was fully informed and advised as to both her rights and interests at the time the deed was executed, which he did not attempt to do. It is not necessary to discuss or determine this contention, however, for we agree with the court below that, from every standpoint, when viewed as a whole, the evidence at bar is amply sufficient to justify the findings in plaintiff's favor. In concluding our discussion of the branch of the case at present under consideration, it may be remarked that the children of plaintiff and defendant, who appeared as witnesses for their mother, joined with her in desiring the trust terminated; and since, under defendant's own testimony, as given at the trial and credited by the chancellor, the deed in question has served its real purpose (no third parties being affected), on this ground alone plaintiff would be entitled to a return of her property; but other defenses are interposed, which call for examination.

Defendant claims that Section 6 of the Act of April 22, 1856, P. L. 532-3, is a bar to plaintiff's action, and, in addition, that the latter has been guilty of such laches as puts her out of court. In connection with these defenses, it is important to keep in mind that the present case is not simply an action by a married woman, but one between husband and wife; that, according to testimony on both sides, there was a continuous recognition by defendant of his wife's equitable estate; and finally that, although it is alleged in the bill and found by the chancellor there was duplicity on the part of defendant in procuring the deed, the consummation of his attempted fraud did not occur until the latter, in this suit, formally set up his claim of absolute ownership.

The best considered decisions upon the subject in hand, even since the Married Woman's Property Acts, are to the effect that, owing to the social importance of maintaining the family relation, in suits between a wife and her husband for the protection of the former's property, statutes of limitation, as also presumptions or estoppels by lapse of time do not ordinarily affect the rights of the wife, since she cannot be expected to treat her husband as a stranger; as certain courts have well said, any other policy would be apt to beget disagreements and contentions in the family fatal to domestic peace: Bowie v. Stonestreet, 61 Am. Dec. 318, 324; Second Nat. Bank of Beloit v. Merrill, 81 Wis. 151, 155; Fourthman v. Fourthman, 15 Ind. App. 199, 201; Yeomans v. Petty, 40 N. J. Eq. 495, 498; Metlar v. Williams, 86 N. J. Eq. 330, 331, 333; Givernaud v. Givernaud, 81 N. J. Eq. 66, 76; 13 R. C. L. 1405, sec. 454; 17 R. C. L. 964, 965.

In addition to authorities already cited, as to the effect of the husband's acknowledgment of his wife's equitable title upon the former's claim that the latter's suit was barred, see Miller v. Baker, 160 Pa. 172, 177-8, and id. 166 Pa. 414, 420, 421; as to the recognition in legal proceedings of the faith and confidence existing between

husband and wife and "the policy of the law to encourage the trust and intimacy of the marriage relation," see Reagle v. Reagle, 179 Pa. 89, 94; Paul v. Kuns, 188 Pa. 504, 508, and opinion of the lower court in Kennedy v. Knight, 174 Pa. 408, 414-5, cited as approved in Gillan v. West, 232 Pa. 74. Finally, in connection with the contentions which we have been discussing, it must be considered that, albeit plaintiff in 1910 knew the character of the document signed by her in 1880, yet she was not informed of her husband's purpose to claim the property in controversy as his own, till the latter gave notice thereof in the answer filed by him in this case, and that, in view of the family relation existing between them, she was not obliged sooner to suspect or discover his fraudulent intention in that regard; as to the effect of this, so far as the statute of limitation is concerned, see Olinger v. Shultz, 183 Pa. 469, 479, and 21 Cyc. 1414, where, in the latter, it is said: "The possession of the husband as trustee is not adverse to the wife except after an open and explicit disclaimer of a holding under the wife's title, brought to the wife's knowledge." We conclude that plaintiff's action is not barred either by laches or the statute.

Both sides are dissatisfied with the surcharges of income against defendant; on the accounting, he was held liable for, and surcharged with, coal royalties received by him from plaintiff's lands. The court below has found, on sufficient evidence, that, under the trust here involved, these royalties were to be collected and put at interest by defendant for the benefit of his wife and children, and, as a matter of fact, they were accumulated and invested by him; therefore it becomes unimportant whether or not the property from which the royalties arose was an open mine at the time of the deed to Mr. Morrish—in other words, whether the money thus derived represents principal or income. The remaining points argued by defendant are without merit, and require no special notice.

Plaintiff claims, on her appeal, that defendant should be made to pay not only the full amount received by him from coal royalties, but interest thereon; she likewise contends he ought to be charged with interest on certain moneys derived from sales of real estate, and ordered to turn over all income, including rents, received from her property. In disposing of these contentions, adversely to the plaintiff, the court below finds the income in question was spent by defendant for family maintenance; that this was done with "full knowledge on the part of his wife, and without protest [from her] during all these years." In view of this finding, and the general rule that ordinarily a husband will not be required to pay interest to his wife, we see no merit in plaintiff's contentions: Kittel's Est., 156 Pa. 445, 454.

All assignments of error are overruled, the decree is affirmed, and both appeals are dismissed at the cost of the respective appellants.